CRAIN, J.
| Jn this suit against an uninsured motorist (UM) insurer, the plaintiff appeals the judgment in his favor, seeking additional damages for injuries sustained in a rear-end collision, as well as penalties and attorney fees. The defendant insurer has answered the appeal, contending that the award of damages should be reduced. We affirm.
FACTS
On February 19, 2006, Jerry Gaspard was involved in an automobile accident on Airline Highway in Ascension Parish. While stopped at a traffic light, the Chevrolet Silverado pickup truck Gaspard was operating was rear-ended by a Nissan Frontier driven by Charles Pepple. As a result of the accident, Gaspard alleged that he suffered injury to his low back. There was no dispute that Pepple was at fault in causing the accident and his insurer paid its policy limits of $15,000.00. Gaspard filed the instant suit against Louisiana Farm Bureau Casualty Insurance Company (Farm Bureau),[1] seeking additional recovery for the injuries he sustained under the UM policy that covered the vehicle he was operating.[2] Gaspard also sought penalties and attorney fees based upon Farm Bureau’s alleged violation of Louisiana Revised Statutes 22:1892 and 22:1973.
The claims against Farm Bureau proceeded to a jury trial. After hearing and considering the evidence, the jury found that Gaspard suffered damages caused by the accident and awarded the following amounts:
laPast Medical Expenses $22,839.00
Future Medical Expenses $20,000.00
*30 Past Physical Pain and Suffering $75,000.00
Future Physical Pain and Suffering $75,000.00
Past Mental and Emotional Anguish and Distress, Aggravation and Inconvenience $25,000.00
Future Mental and Emotional Anguish and Distress, Aggravation and Inconvenience $25,000.00 Physical Disability and Physical Limitations $25,000.00
Loss of Enjoyment of Life $25,000.00
Past Lost Income $0
Future Lost Income $0
TOTAL $292,839.00
The jury determined that Farm Bureau’s failure to timely pay the amount of Gas-pard’s claim was not arbitrary, capricious, or without probable cause and did not award penalties and attorney fees. A written judgment was rendered in accordance with the jury’s verdict, reflecting the award to Gaspard of $292,839.00, subject to a credit of $28,500.00, for a total _ of $264,339.00, plus judicial interest from the date of judicial demand. The trial court denied Gaspard’s motion for judgment notwithstanding the verdict or alternatively for new trial or additur.
Gaspard now appeals, contending that the general and special damages awarded by the jury are abusively low and should be increased. He further contends that the jury erred in failing to find that Farm Bureau was arbitrary and capricious and in failing to award penalties and attorney fees. Farm Bureau has answered the appeal seeking to have the general and special damages reduced.
^DISCUSSION

Standard of Review

It is well-settled that an appellate court may not disturb a jury’s factual findings in the absence of manifest error. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). On review the appellate court does not decide whether the jury was right or wrong; rather it must consider the entire record to determine whether a reasonable factual basis exists for the finding, and whether the finding is manifestly erroneous or clearly wrong. Stobart v. State, Through Dept. of Transp. and Dev., 617 So.2d 880, 882 (La.1993). Reasonable evaluations of credibility and inferences of fact should not be disturbed, even if the appellate court feels that its own evaluations and inferences are as reasonable. Rosell, 549 So.2d at 844. Thus, where there are two permissible views of the evidence, the jury’s choice between them cannot be manifestly erroneous or clearly wrong. Id. In conducting its review the appellate court must be cautious not to reweigh the evidence or substitute its own factual finding just because it would have decided the case differently. Guillory v. Lee, 09-0075 (La.6/26/09), 16 So.3d 1104, 1117.
It is also well-settled that a jury is given great discretion in assessing quantum for both general and special damages. La. Civ.Code art. 2324.1; Guillory, 16 So.3d at 1116. An appellate court reviews the amount awarded by the jury under the abuse of discretion standard, meaning that it may disturb a damages award and resort to a review of prior similar awards only after an articulated analysis of the facts reveals an abuse of discretion. See Bouquet v. WalMart Stores, Inc., 08-0309 (La.4/4/08), 979 So.2d 456, 459.

Evidentiary Error

In presenting evidence as to Gaspard’s claim for penalties and attorney fees, Gas-pard’s attorney questioned Philip Duncan, Farm Bureau’s District Claims Manager, about Farm Bureau’s handling of Gas-pard’s claims. Specifically, | ..¡Gaspard’s attorney asked Duncan about the reserve *31 amount that Farm Bureau established, which Duncan confirmed is the amount insurance companies are legally required to establish for the potential value of a claim. Farm Bureau objected to the relevance of the reserve amount. The trial court overruled the objection, finding that the reserve amount was relevant as to whether Farm Bureau at one time evaluated the claim at a higher amount than they were willing to pay Gaspard. Duncan then testified that the reserve for Gaspard’s claims was set in May 2007 at $500,000.00. Farm Bureau contends that the trial court erred in admitting the reserve amount, and that the error contaminated the jury and led to a much higher award than is reasonable.
Except as otherwise provided by law, all relevant evidence is admissible. La.Code Ev. art. 402. Relevant evidence is that having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. La.Code Ev. art. 401. Whether evidence is relevant is within the broad discretion of the trial court, and its ruling will not be disturbed on appeal in the absence of a clear abuse of that discretion. Gorman v. Miller, 12-0412 (La. App 1 Cir. 11/13/13), 136 So.3d 834, 840, writ denied, 13-2909 (La.3/21/14), 135 So.3d 620; Travis v. Spitale’s Bar, Inc., 12-1366 (La.App. 1 Cir. 8/14/13), 122 So.3d 1118, 1126, writs denied, 13-2409 (La.1/10/14), 130 So.3d 327 and 13-2447 (La.1/10/14), 130 So.3d 329.
After thorough review, we agree with Farm Bureau that the reserve amount it established upon initially evaluating Gaspard’s claims under the policy was not relevant to Gaspard’s claim for penalties and attorney fees. As will be discussed herein, an insurer who does not tender unconditionally a reasonable payment, a figure over which reasonable minds could not differ, will be subject to penalties and attorney fees. See La. R.S. 22:1973, 22:1892; McDill v. Utica Mut. Ins. Co., 475 So.2d 1085, 1092 (La.1985). The record does not establish that the reserve Ramount equates to the amount over which reasonable minds could not differ, nor is it relevant to establishing that amount. Cf. Molony v. USAA Property and Cas. Ins. Co., 97-1836 (La.App. 4 Cir. 3/4/98), 708 So.2d 1220, 1226 (stating that the court was satisfied that the reserve amount does not mean the amount over which reasonable minds could not differ, as required by McDill). Additionally, the reserve set by Farm Bureau has no bearing on Farm Bureau’s alleged failure to conduct a reasonable evaluation of Gaspard’s claims.
The erroneous introduction of evidence is subject to a harmless error analysis. See Thongsavanh v. Schexnayder, 09-1462 (La.App. 1 Cir. 5/7/10), 40 So.3d 989, 995, writ denied, 10-1295 (La.9/24/10), 45 So.3d 1074. Duncan explained that the reserve represented only the potential value of a claim, based upon the information available at the time. Duncan also explained that once set, the amount of the reserve is rarely reduced. Duncan testified that in this case, Farm Bureau had serious concerns as to whether the accident was the cause of Gaspard’s alleged damages. Moreover, after considering the entirety of the evidence, the jury awarded an amount significantly less than the reserve amount. For these reasons, we find that the error in admitting the reserve amount was harmless.

Damages

General damages are intended to compensate an injured plaintiff for mental or physical pain and suffering, inconvenience, loss of gratification or intellectual or physical enjoyment, or other losses of *32 lifestyle. See Thongsavanh, 40 So.3d at 1001. They are inherently speculative in nature and cannot be fixed with mathematical certainty. Miller v. LAMMICO, 07-1352 (La.1/16/08), 973 So.2d 693, 711. Since the jury is in the best position to evaluate witness credibility and see the evidence firsthand, it is afforded much discretion in independently assessing the facts and rendering an award. Id.
|7On appeal, the role of the appellate court is to review the exercise of discretion by the jury, not to decide what it considers to be an appropriate award. Youn v. Maritime Overseas Corp., 623 So.2d- 1257, 1260 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award. Youn, 623 So.2d at 1261. Only after it is determined that there has been an abuse of discretion is a resort to prior awards appropriate, and then only to determine the highest or lowest point of an award within that discretion. Coco v. Winston Indus., Inc., 341 So.2d 332, 335 (La.1976); Aymami v. St. Tammany Parish Hosp. Service Dist. No. 1, 13-1034 (La.App. 1 Cir. 5/7/14), 145 So.3d 439, 448. In reviewing a general damages award a court does not review a particular item in isolation; rather, the entire general damages award is reviewed for abuse of discretion. Aymami, 145 So.3d at 448.
Special damages are those which have a “ready market value,” such that the amount of the damages theoretically may be determined with relative certainty, and include past and future medical expenses. See Menard v. Lafayette Ins. Co., 09-1869 (La.3/16/10), 31 So.3d 996, 1006; Kaiser v. Hardin, 06-2092 (La.4/11/07), 953 So.2d 802, 810 (per curiam). A tort victim is ordinarily entitled to recover past and future medical expenses incurred as a result of an injury if he proves, by a preponderance of the evidence, the existence of the injuries and a causal connection between the injuries and accident. Yohn v. Brandon, 01-1896 (La.App. 1 Cir. 9/27/02), 835 So.2d 580, 584, writ denied, 02-2592 (La.12/13/02), 831 So.2d 989. This burden of proof is met by establishing, through medical testimony, that it is more probable than not that the injuries were caused by the accident. Id.
|sThe record establishes that Gaspard was fifty years old when the accident occurred in 2006. He had a history of back and neck pain and had been -treating with his chiropractor, Dr. Gary Black, for thirty years. In 1998, Gaspard was referred to a physiatrist, Dr. Gray Barrow, for evaluation and treatment of low back pain, which resulted in a course of physical therapy. In 2004, Gaspard was referred to Dr. Jorg-es Isaza, an orthopedic surgeon. Dr. Isaza ordered a discogram, which was performed on the discs at L2-3, L3^4, L4-5, and L5-Sl. The discs at L2-3 and L5-S1 were described as normal. An internal fissure of the L4-5 disc was identified, but that disc was described as non-painful. The L3-4 disc had a tear and was identified as the source of Gaspard’s low back pain.
In October 2004, Dr. Isaza performed an intradiscal electrothermal therapy (IDET) procedure on the disc at L3-4, which involved inserting a probe into that disc that was then heated. The goal of the procedure was for scar tissue to form and seal the tear over the course of a few months, in hopes of relieving at least some pf the pain. The IDET procedure does not produce immediate pain relief, and approximately six months after the IDET procedure, Dr. Barrow administered sacroiliac *33 joint injections, which provided only hours of relief for Gaspard’s low back pain. Gas-pard testified, however, that approximately eight months after the IDET procedure, he did not need chiropractic treatment for low back pain, although he continued to seek treatment for neck and upper back pain. He also continued to take and refill prescriptions for Lortab painkillers.
The accident occurred on February 19, 2006. Gaspard described the impact as “pretty solid” and stated he developed a headache and back pain. He did not immediately seek medical attention, but three days after the accident Gaspard returned to Dr. Black complaining of headache, as well as neck, low back, and hip pain. At that time Gaspard rated his low back pain as six out of ten. Dr. Black attributed the low back pain Gaspard experienced to the accident. Dr. Black’s |9notes from Gaspard’s next visit two days later indicate that Gaspard’s symptoms were improving, although it is unclear which symptoms had improved. Gaspard saw Dr. Black again on March 3, 2006, and on March 10, 2006, when he requested that he be released from Dr. Black’s care although Dr. Black did not feel that Gaspard had reached maximum medical improvement. Gaspard returned to Dr. Black on May 11, 2006, at which time Dr. Black documented complaints of middle back, upper back, and neck pain. On June 1, 2006, Gaspard again saw Dr. Black and complained only of low back pain.
Later in June 2006, Gaspard returned to Dr. Barrow because treatment with Dr. Black was not providing him relief. Gaspard related his involvement in the accident, and complained of low back pain rated as ten out of ten. Dr. Barrow believed that the pain generated from Gaspard’s spine and ordered another dis-cogram. That discogram revealed an annular tear in the L4-5 disc, which was not shown on the pre-accident discogram. Gaspard continued treating with Dr. Barrow until August 2009, reporting pain varying between seven and eight out of ten, with some temporary relief achieved by epidural steroid injections. Dr. Barrow opined that the accident produced the annular tear at L4-5 that caused Gaspard’s chronic pain.
Approximately four months after the accident, Gaspard returned for a consultation with Dr. Isaza, where Gaspard related that after finally feeling relief from the IDET procedure, he had been involved in the accident, and was experiencing low back pain that he rated as ten out of ten. Dr. Isaza reviewed the post-accident disco-gram results, describing them as showing the annular tear at L4-5, which was not evidenced by the pre-accident discogram. An MRI revealed some dehydration of the disc at L3-4, and a pars defect at L5, which limited Gaspard’s surgical options. Dr. Isaza recommended conservative care, including medications and pain management, and advised that Gaspard should not continue | inhis employment, which involved extensive driving. A second opinion by another orthopedic surgeon confirmed that surgery was not a viable option.
At trial, Gaspard described his continued pain, which was relieved only by lying down. Gaspard testified that he “sucked it up” and continued his job duties until August 2006, when he took five months sick leave, and ultimately took disability retirement. Gaspard had worked at his job for nearly thirty years and had intended to retire at either age 65 or during the year of the trial, when he would have achieved “the Rule of 90,” meaning that the sum of his age and years of service would have been 90. However, his employment required extensive driving, which he was unable to continue due to pain and the narcotic pain medication he was taking. *34 Louis Lipinski, an expert in the field of vocational rehabilitation, confirmed that the medical records he reviewed indicated that Gaspard was unable to work at all.
In 2010, Gaspard suffered a psychiatric episode and was involuntarily admitted to a psychiatric hospital. He was diagnosed with bipolar disorder and began taking lithium and antidepressants.[3] At trial, Gaspard argued that his bipolar disorder was triggered by the accident and clarified that he was not claiming that it was caused by the accident. His treating psychiatrist opined that the symptoms that led to the diagnosis were -attributable to the severe stress that resulted from the accident, including the loss of his job. The psychiatrist’s opinion was based on the history given to him by Gaspard, which did not include prior psychiatric treatment, a history of violent behavior with his ex-wife, or that he had been prescribed antidepressants.
Gaspard testified that the accident has dramatically affected his life, which he described as “existing not living.” At the time of the accident, Gaspard and his |nwife, Wanda, had been married approximately two years. Wanda confirmed that Gaspard suffered continued pain that prohibited them from engaging in activities they had previously enjoyed, such as playing golf. Gaspard’s step-son added that after the accident, Gaspard could do nothing physical and was in bed sixty percent of the time, leaving all of the work around the house to others.
Gaspard argues that the evidence presented establishes that his life has been profoundly and irreversibly affected by the injuries he sustained in the accident. He points to the pain level he now endures, his need to take narcotic pain medication, and the fact that he is now forced to rely on disability retirement income to support his family, in support of his argument that the general damages awarded are abusively low.
Farm Bureau counters that the general damages award is abusively high considering the undisputed testimony of Dr. Joe Morgan, who performed an independent medical exam on Gaspard at Farm Bureau’s request, and that there was no significant change in Gaspard’s lumbar spine after the accident. Farm Bureau contends that Gaspard’s spine was structurally and morphologically the same after the accident and without being able to identify a disc bulge, disc herniation, or new disc tear, the award should be substantially reduced.
In reviewing the competing arguments regarding the amount the jury awarded in general damages, we are mindful that the award can be disturbed only if the record clearly reveals that the jury abused its discretion. See Wainwright v. Fontenot, 00-0492 (La.10/17/00), 774 So.2d 70, 74. After thorough review, we conclude that the jury could have reasonably concluded that the amounts it awarded for the particular injuries Gaspard suffered were reasonable. Although Dr. Morgan testified that there was no significant change in Gaspard’s lumbar spine after the accident, both Doctors Isaza and Barrow identified the source of Gaspard’s post-accident low back pain as the L4-5 disc, and testified that the pain |12was, more probably than not, caused by the accident. The jury’s decision to credit the medical testimony presented by Gaspard cannot be manifestly erroneous. See Rosell, 549 So.2d at 845. Further, we cannot find that *35 the jury abused its vast discretion in assessing the amount of general damages in this case.
With regard to special damages, the jury awarded Gaspard past and future medical bills and declined to award any amount for past and future lost wages. Gaspard contends that the jury’s award for past medical expenses is abusively low and should be increased to include amounts for psychiatric treatment and bipolar medications, as well as all expenses associated with treatment of his low back since the time of the accident.
As set forth previously, Gaspard’s treating psychiatrist opined that his bipolar disorder manifested due to stress resulting from the accident. However, that opinion was based on the history Gaspard related and Farm Bureau established that the history Gaspard related was incomplete. Gaspard admitted to psychiatric treatment prior to the accident, and to previously taking antidepressants. He explained that this information was not disclosed to his psychiatrist because it had occurred a long time ago and he did not remember. His psychiatrist also acknowledged that it was possible that Gaspard had previously been diagnosed with bipolar disorder based on a statement allegedly made by Gaspard at the time of his involuntary hospitalization to the effect that he simply needed a pill for his bipolar disorder. The psychiatrist explained, however, that the term “bipolar disorder” is loosely used by some people and Gaspard may have simply thought he was bipolar. Considering this equivocal testimony, the jury was within its discretion to reject amounts for psychiatric treatment in its award of past medical expenses.
Gaspard additionally argues that the jury’s past medical expenses should have included all amounts claimed for treatment of low back pain. However, as |1sFarm Bureau points out, it was well established that Gaspard had a long history of low back pain for which he was being treated until just prior to the accident. When medical expenses have been incurred for the treatment of multiple conditions and a jury finds that some, though not all, of those conditions were caused by the accident in question, the jury’s great discretion permits it to award something less than the full amount of the medical expenses claimed. Travis, 122 So.3d at 1129.
Although Gaspard testified that the pre-accident IDET procedure on the L3-4 disc had resulted in a reduction in his low back pain, it was not established that his back issues had resolved, such that the jury could not have reasonably concluded that some post-accident back treatments were not related to the accident. Although testimony by Doctors Isaza and Barrow provided a reasonable basis for the jury to find that the accident caused Gaspard to suffer damages, upon the evidence presented we cannot conclude that the jury was manifestly erroneous in its obvious determination that not all of the medical expenses claimed were attributable to the accident. We further find no error in the jury’s decision to award Gaspard an amount less than the total medical expenses claimed. Cf. Travis, 122 So.3d at 1129-30.
Through its answer to the appeal, Farm Bureau challenges the jury’s award of future medical expenses. Recovery of future medical expenses is dependent upon the tort victim establishing the probability of future medical expenses with supporting medical testimony and estimations of their probable cost. Menard v. Lafayette Ins. Co., 09-1869 (La.3/16/10), 31 So.3d 996, 1006. Future medical expenses must be established with some degree of *36 certainty. Id. Farm Bureau argues that the evidence offered by Gaspard does not rise to the level necessary to prove future medical expenses.
114Pr. Isaza testified that he anticipated Gaspard would need continued pain medication for discogenic pain, muscle spasms, and inflammation. He further testified that to prevent addiction, Gaspard would require future pain management. Dr. Barrow also speculated that Gaspard may need future treatment such as activity modification, medication management, physical therapy, and possible procedures for flare-ups such as injections. Gaspard also contends that he will need future psychiatric treatment.
The record evidence sufficiently establishes that, as a result of the accident, future medical expenses will be medically necessary. When the record establishes that future medical expenses will be necessary and inevitable, the court should not reject an award of future medical expenses on the basis that the record does not provide the exact value of the necessary expenses, if the court can examine the record and determine from evidence of past medical expenses and other evidence a minimum amount that reasonable minds could not disagree will be required. Stiles v. K Mart Corp., 597 So.2d 1012, 1012 (La.1992). We find that the evidence of past medical expenses reasonably supports the jury’s conclusion that a minimum amount of future medical expenses on which reasonable minds could not disagree was $20,000.00.
The jury made no award for past or future lost wages. Gaspard contends that this was clearly wrong.
At the time of the accident, Gaspard was a Field Services Director for Louisiana Farm Bureau Federation (a separate company from Farm Bureau). He acted as a liaison between national and state offices and parish affiliates, which required that he drive extensively, up to three thousand miles per month. Dr. Barrow testified that the extensive driving was a factor that predisposed Gaspard to back pain and further explained that sitting for prolonged periods of time is one of the worst things that a person -with discogenic low back pain can do. In fact, based | lson Gaspard’s history and medical records, Dr. Barrow stated that he probably would have disabled Gaspard in March 2005 if he had been asked to do so. After the accident, Dr. Isaza thought that Gaspard definitely could not return to working at his job due to his pain level and the narcotic medication he was taking to control that pain, and recommended that he consider disability.
In addition to the back problems that Gaspard experienced, the jury heard testimony regarding Gaspard’s bipolar diagnosis and lithium treatment, which was suggested to be the cause of tremors he began experiencing. However, Gaspard’s psychiatrist testified that a bipolar diagnosis would not have kept Gaspard from continuing his job. It was further established that in 2010, Gaspard was diagnosed by an ophthalmologist, Dr. Aravinda Rao, with age-related macular degeneration. Dr. Rao testified that patients with macular degeneration can have fluctuating vision over the course of time, and that Gaspard’s vision acuity had shown improvement by 2012. Dr. Rao confirmed that even when she saw him at his worst, Gaspard could have qualified for a Louisiana driver’s license with use of a bioptic telescopic lens. In fact, in 2012, Gaspard related to Dr. Rao that he had passed the driver’s license exam.
A plaintiff seeking damages for lost wages bears the burden of proving lost earnings. Graham v. Offshore Spe *37 cialty Fabricators, Inc., 09-0117 (La.App. 1 Cir. 1/8/10), 37 So.3d 1002, 1015. Such damages must be proven with reasonable certainty and are reviewed for manifest error. Boudreaux v. State, Dept. of Transp. & Dev., 04-0985 (La.App. 1 Cir. 6/10/05), 906 So.2d 695, 705, writs denied, 05-2164 (La.2/10/06), 924 So.2d 174 and 05-2242 (La.2/17/06), 924 So.2d 1018. While there was no real dispute that Gas-pard is now unable to work, we are unable to conclude that the jury clearly erred in finding that Gaspard failed to prove his claim for lost wages with reasonable certainty. The jury could have reasonably 11Rconcluded that Gaspard’s inability to work was attributable to factors other than the accident, including his pre-accident back problems.

Penalties and Attorney Fees

Finally, Gaspard asserts that the trial court erred in presenting the jury with a verdict form that was legally incorrect with regard to his claim for penalties and attorney fees under Louisiana Revised Statutes 22:1973 and 22:1892, and that the jury erred in failing to find that Farm Bureau owed penalties and attorney fees.
In reviewing a jury verdict form, an appellate court employs a manifest error standard of review. The verdict form may not be set aside unless the form is “so inadequate that the jury is precluded from reaching a verdict based on correct law and facts.” See Townes v. Liberty Mut. Ins. Co., 09-2110 (La.App. 1 Cir. 5/7/10), 41 So.3d 520, 527. Jury interrogatories must fairly and reasonably point out the issues to guide the jury in reaching an appropriate verdict. If the verdict form does not adequately set forth the issues to be decided by the jury, such interrogatories may constitute reversible error. Id.
Louisiana Revised Statute 22:1892A(1) requires insurers to pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss. Subsection B(l) provides, in pertinent part:
Failure to make such payment within thirty days after receipt of such satisfactory written proofs and demand therefor ... when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty> ⅛ addition to the amount of the loss, of fifty percent damages on the amount found to be due from the insurer to the insured, or one thousand dollars, whichever is greater[.]
Louisiana Revised Statute 22:1973 imposes an obligation of good faith and fair dealing on an insurer, including the affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant. An insurer may be subject to penalties not to exceed two times the damages sustained or five thousand dollars, whichever is greater, if the insurer fails | i7to pay a claim due an insured within sixty days of receiving satisfactory proof of loss when such failure is arbitrary, capricious, or without probable cause. See La. R.S. 22:1973B(5) and C.
The conduct prohibited by Section 22:1892A(1) is virtually identical to the conduct prohibited by Section 22:1973B(5): the failure to timely pay a claim after receiving satisfactory proof of loss when that failure to pay is arbitrary, capricious, or without probable cause. Reed v. State Farm Mutual Automobile Insurance Company, 03-107 (La.10/21/03), 857 So.2d 1012, 1020. The primary difference is the time periods allowed for payment. Reed, 857 So.2d at 1020. Both statutes are penal in nature and must be strictly construed. Reed, 857 So.2d at 1020.
*38 Relative to this claim, the verdict form asked the jury whether Farm Bureau’s failure to pay the amount of Gas-pard’s claim within the relevant time frames was “arbitrary, capricious and without probable cause, that is based on random choice or personal whim.” Gas-pard contends that this introduced an additional element to the statutory criteria in that it required the jury to find the existence of “random choice” or “personal whim” in order to conclude that Farm Bureau’s failure to timely pay violated the statutes. We disagree. The supreme court has explained that in this context, the terms “arbitrary” and “capricious” are virtually indistinguishable from each other, with “arbitrary” meaning “an act ‘based on random choice or personal whim, rather than any reason or system’ ” and “capricious” meaning “action [that is] ‘given to sudden and unaccountable changes of behavior.’ ” Reed, 857 So.2d at 1020 n. 7 (quoting THE NEW OXFORD AMERICAN DICTIONARY 80 (Elizabeth J. Jewell & Frank Abate eds., 2001)). The trial court’s jury interrogatory simply expresses this explanation of the meaning of the legal terminology. Thus, we cannot find that the verdict form was confusing or misleading such that it precluded the jury from reaching a decision based on the correct law and facts.
118With regard to the merits of the penalties and attorney fees argument, Gas-pard contends that Farm Bureau never conducted a good faith investigation, that it ignored medical records and testimony, and that its failure to tender was without probable cause. Farm Bureau disputes these claims, arguing that it acted in good faith when it opened a file and attempted to obtain a medical authorization and subrogation agreement from Gas-pard. It argues that Gaspard’s failure to sign the medical authorization thwarted its investigation and, once medical records were received, Farm Bureau had legitimate questions as to the causation of Gaspard’s injuries.
An insurer’s conduct depends on the facts known to the insurer at the time of its action, and penalties should not be assessed when the insurer has a reasonable basis to defend the claim and acts in good-faith reliance on that defense. Louisiana Bag Company, Inc.v. Audubon Indemnity Company, 08-0453 (La.12/2/08), 999 So.2d 1104, 1114. Especially when there is a reasonable and legitimate question as to the extent and causation of a claim, bad faith should not be inferred from an insurer’s failure to pay within the statutory time limits when such reasonable doubts exist. Reed, 857 So.2d at 1021. In those instances where there are substantial, reasonable, and legitimate questions as to the extent of an insurer’s liability or an insured’s loss, failure to pay within the statutory time period is not arbitrary, capricious, or without probable cause. Louisiana Bag Company, Inc., 999 So.2d at 1114. Because the question is essentially a factual issue, the tidal court’s finding should not be disturbed on appeal absent manifest error. Louisiana Bag Company, Inc., 999 So.2d at 1120; Reed, 857 So.2d at 1021.
When Gaspard notified Farm Bureau of the accident, he indicated that he was experiencing headaches and backache, and he had visited the chiropractor, and that his neck joint and middle back joints were out of line. Farm Bureau sent Gas-pard a medical authorization form and sub-rogation agreement; Gaspard | ^completed and returned only the subrogation agreement. Medical records were forwarded to Farm Bureau in January 2007. Wage loss documentation was forwarded in March 2007. Farm Bureau paid its medical payment limits, then, on the anniversary date *39 of the accident, made a tender of $8,500.00. Farm Bureau received documentation that Gaspard was unable to continue working. Philip Duncan, Farm Bureau’s District Claims Manager, testified that although Farm Bureau received medical records regarding Gaspard’s injuries and disability, it had no verification of a causal connection between the injury Gaspard sustained in the accident and his disability. Farm Bureau further noted inconsistencies within its file’, which caused it to question whether Gaspard’s injuries were caused by the accident.
Although the jury concluded that Farm Bureau did not make a timely tender after receiving satisfactory proof of loss, based on the evidence presented, it determined that Farm Bureau was not arbitrary or capricious in doing so. After considering the entire record, we cannot conclude that the jury was manifestly erroneous in this determination. Based on the record, the jury could have reasonably concluded that Farm Bureau had a reasonable and legitimate question as to the extent of its liability and Gaspard’s loss.
CONCLUSION
For the reasons set forth herein, the judgment of the trial court is affirmed. Costs of this appeal are assessed equally to Jerry Gaspard and Louisiana Farm Bureau Casualty Insurance Company.
JUDGMENT AFFIRMED; ANSWER TO APPEAL DENIED.

. The petition named Southern Farm Bureau Casualty Insurance Company as the defendant. The defendant’s answer clarified that the correct name was Louisiana Farm Bureau Casualty Insurance Company.

. Gaspard was operating a company vehicle provided for his personal use by his employer, Farm Bureau Federation, which, although a stock holder of the insurer, Farm Bureau, is a distinct company.

. Gaspard testified that he was later diagnosed with a mood disorder; however, expert psychiatric testimony established that bipolar disorder falls under die umbrella of a mood disorder and results in the same treatment.