STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2019 CA 0602

CALVIN GUIDRY AND DENISE GUIDRY

VERSUS

USAGENCIES CASUALTY INSURANCE COMPANY, INC.,
PATRICIA MOUSSEAU, GLENN MOUSSEAU, VENTURE
TRANSPORT LOGISTICS, L.L.C., AND ZURICH AMERICAN
INSURANCE COMPANY

Judgment Rendered: __DEC 2 7 2019__

* * * * *

On Appeal from the
17th Judicial District Court
In and for the Parish of Lafourche
State of Louisiana
Trial Court No. 106901

Honorable Christopher J. Boudreaux, Judge Presiding

* * * * *

J. Patrick Connick
Marrero, LA

Attorney for Plaintiffs-Appellants,
Calvin Guidry and Denise Guidry

Leigh Ann Schell
Alexandra Roselli
Edwin C. Laizer
Christopher A. D'Amour
New Orleans, LA

Attorneys for Defendant-Appellee,
Hudson Insurance Company

* * * * *

BEFORE: HIGGINBOTHAM, PENZATO, AND LANIER, JJ.

**HIGGINBOTHAM, J.**

In this suit against an uninsured/underinsured motorist (UM) insurer, Hudson Insurance Company, the plaintiffs, Calvin Guidry and his wife, Denise Guidry, appeal a judgment in their favor. The Guidrys are seeking an additional award for penalties and attorney fees due to Hudson's alleged bad faith in handling their claim.

## FACTUAL AND PROCEDURAL HISTORY

This case has a long thirteen-year history that began on July 14, 2006, when the Guidrys were involved in a motor vehicle accident on Highway 90 in Lafourche Parish. At the time of the accident, the Guidrys were transport "hotshot" delivery drivers for Venture Transport Logistics, LLC, and they were returning from a delivery made in their leased pickup truck. Mr. Guidry was driving and Mrs. Guidry was riding in the passenger seat; she sustained head and whiplash and concussion-type injuries in the accident, immediately feeling dazed and confused, pain in her neck, right shoulder, knee, and head. The Guidrys filed suit for personal injury damages on July 12, 2007, against numerous defendants, including the other driver, Patricia Mousseau, her husband, Glenn Mousseau, and their liability insurer, USAgencies Casualty Insurance Company, Inc. The Guidrys also sued Venture and its trucking liability insurer, Zurich American Insurance Company.

In August 2008, the Guidrys settled and dismissed their claims against the Mousseaus and USAgencies, reserving their rights to pursue claims against other parties and to continue to litigate their claims against Venture and Zurich. On December 11, 2009, the Guidrys amended their petition to assert a UM claim against Hudson, the insurer from whom Venture's required "bobtail" personal coverage for the Guidrys' leased truck was obtained. The Guidrys amended their petition against Hudson primarily because Mrs. Guidry was still experiencing headaches and neck pain three years after the accident. Unrelated to the 2006 accident, however, Mrs. Guidry sustained a back injury approximately one month before Hudson was

2

brought into the litigation. Mrs. Guidry suffered a second unrelated back injury a few months later in early 2010, which necessitated back surgery in March 2010. Mrs. Guidry was not able to return to work after her back surgery.

In December 2010, Hudson moved for summary judgment, maintaining that the Hudson policy did not provide coverage to the Guidrys, because they were acting in "the business of" their employment with Venture at the time of the accident and therefore, Hudson argued that Zurich's liability policy was primary. The trial court denied Hudson's motion on February 24, 2011, noting that Hudson's policy exclusion did not apply. This court denied supervisory review. **Guidry v. USAgencies**, 2011-0764 (La. App. 1st Cir. 10/14/11) (unpublished writ action). Thereafter, on December 22, 2011, even though the parties had very differing views on the extent and duration of Mrs. Guidry's injuries and whether they were all related to the 2006 accident, Hudson unconditionally tendered the undisputed amount of $100,000.00 to the Guidrys, who had demanded Hudson's $1,000,000.00 policy limits. The unconditional tender was documented and pursuant to discussions between counsel. In March 2012, Venture and Zurich moved for summary judgment, seeking dismissal of all of the Guidrys' claims against them and arguing that the Hudson UM policy provided the primary coverage for the Guidrys' damages. The trial court granted summary judgment in favor of Venture and Zurich on October 23, 2012. No appeal was taken from that final judgment.

The Guidrys then amended their petition again, to add claims against Hudson for bad faith damages and penalties. In January 2013, Hudson filed a motion for partial summary judgment, seeking dismissal of the bad faith claims. That motion was granted; however, this court reversed and the Louisiana Supreme Court denied supervisory review. **Guidry v. USAgencies**, 2013-0780 (La. App. 1st Cir. 8/29/13) (unpublished writ action), writ denied, 2013-2317 (La. 12/2/13), 126 So.3d 1288.

3

In February 2014, Hudson filed an exception raising the objection of prescription, asserting that regardless of UM coverage under its policy, the Guidrys' claims against Hudson had prescribed. Hudson maintained that the Guidrys' suit against the Mousseaus and USAgencies could not serve to interrupt prescription as to Hudson, because the Guidrys had voluntarily dismissed those defendants. Additionally, Hudson argued that the Guidrys' suit against Venture and Zurich did not interrupt prescription against it since the trial court had found that neither Venture nor Zurich furnished UM coverage to the Guidrys, which meant that neither Venture nor Zurich were solidary obligors with Hudson. The trial court denied Hudson's prescription exception and this court denied Hudson's writ application. **Guidry v. USAgencies**, 2014-1348 (La. App. 1st Cir. 12/23/14) (unpublished writ action).

A year later, in February 2015, Hudson filed yet another motion for summary judgment, again asserting no UM coverage based upon new facts and evidence that had been discovered revealing that the Guidrys were in fact in the business of Venture at the time of the accident and thus, the Zurich policy actually afforded coverage for the Guidrys' claims. The Guidrys filed an opposition and cross-motion for summary judgment to preclude further litigation of coverage issues. The trial court eventually denied Hudson's motion, granted the Guidrys' motion, and ordered Hudson to provide UM coverage. That judgment was signed on February 10, 2016. Hudson appealed the summary judgment ruling, partially arguing that the Guidrys' claims against Hudson were prescribed. In another appeal heard by a different panel, this court affirmed the trial court's judgment ruling that Hudson's policy provided UM coverage to the Guidrys and additionally finding no merit to Hudson's argument that the Guidrys' UM claims are prescribed. **Guidry v. USAgencies**, 2016-0562 (La. App. 1st Cir. 2/16/17), 213 So.3d 406, 422, writ denied, 2017-0601 (La. 5/26/17), 221 So.3d 81. When the supreme court denied Hudson's application for

4

supervisory review as to the prescription issue on May 26, 2017, Hudson unconditionally tendered another undisputed amount of $200,000.00 to the Guidrys on June 23, 2017, even though the parties continued to contest the duration and cause of Mrs. Guidry's injuries and her extensive medical treatment.

The matter proceeded to a jury trial on the merits of damages and bad faith held on July 30 to August 8, 2018.[1] During the eight-day trial, the jury heard evidence that Mrs. Guidry was initially treated for concussion and whiplash/soft-tissue type injuries involving her neck, shoulder, and head after the 2006 accident. Shortly after the accident, Mrs. Guidry continued to suffer from daily headaches, and she continued to receive medical treatment for neck and head pain between 2006 and the time of trial. Mrs. Guidry was also treated for severe depression, anxiety, and insomnia related to her debilitating headaches. The medical treatment consisted of multiple facet joint injections, trigger point injections, cervical epidural steroid injections, nerve block injections, and botox injections in her neck and head, and in 2012, she ultimately opted to have a controversial occipital nerve stimulator placed in her head in an attempt to alleviate her headaches. Unfortunately, none of the treatments ever completely resolved Mrs. Guidry's headaches.

The jury also heard that in November 2009, Mrs. Guidry suffered an unrelated back injury and a second unrelated back injury in February 2010. It was at that point, that Mrs. Guidry was no longer able to continue working at her clerical position and she had the first of three back surgeries, all of which failed. The jury heard evidence that Mrs. Guidry's medical condition continued to drastically decline after the unrelated back injuries and failed back surgeries. Eventually, she successfully applied for and received disability benefits. Mrs. Guidry continued to see many doctors for her back pain and daily headaches up until the time of trial. In 2013, she

---

[1] Before trial, Hudson filed a motion to bifurcate the issues of bad faith and damages, primarily to avoid jury confusion. The Guidrys opposed bifurcation, and the trial court denied the motion.

5

was hospitalized several times for complications due to taking multiple prescription medications.

Almost all of Mrs. Guidry's treating physicians testified at trial live or by deposition. Prior to the trial on the merits, several doctors had expressed concern that some of Mrs. Guidry's ongoing medical problems were related to overmedication issues. The jury heard the overmedication concerns from several of Mrs. Guidry's own treating physicians, as well as Hudson's single medical witness. The jury also heard testimony from Hudson's corporate representative that Hudson's position was that Mrs. Guidry's medical records and the Guidrys' demands revealed that her injuries from the 2006 accident did not include her back injuries and surgeries. However, the jury also heard testimony from some doctors that related all of her problems to the 2006 accident, and that Mrs. Guidry is not the same person she was before the 2006 accident.

At the end of the trial, the jury awarded the Guidrys a total of $2,014,500.00 in damages, but denied the Guidrys' bad faith claims against Hudson. The trial court signed a judgment in accordance with the jury verdict on October 5, 2018. The final judgment reflected that Hudson had unconditionally tendered the remaining balance of its $1,000,000.00 policy limit, less the pre-trial unconditional tenders totaling $300,000.00, plus pre-judgment interest. The Guidrys moved for a judgment notwithstanding the jury's verdict (JNOV), or in the alternative a motion for new trial on the bad faith issues. The trial court denied both the JNOV and motion for new trial on November 30, 2018. The Guidrys appealed both judgments. On appeal, the Guidrys assert that the jury manifestly erred in not finding that Hudson acted arbitrarily, capriciously, and without probable cause in failing to timely pay the Guidrys' claims after receiving satisfactory proof of loss. Additionally, the Guidrys claim that Hudson's actions constituted a breach of its duty of good faith and fair dealing. The Guidrys further argue that the trial court abused its discretion in not

6

granting a JNOV or new trial on the bad faith issue, as well as the exclusion of evidence concerning Hudson's alleged collusion with third parties.[2]

## LAW AND ARGUMENT

### Standard of Review

It is well-settled that an appellate court may not disturb a jury's factual findings in the absence of manifest error. **Rosell v. ESCO**, 549 So.2d 840, 844 (La. 1989). On review, the appellate court does not decide whether the jury was right or wrong; rather it must consider the entire record to determine whether a reasonable factual basis exists for the finding, and whether the finding is manifestly erroneous or clearly wrong. **Stobart v. State through Dept. of Transp. and Development**, 617 So.2d 880, 882 (La. 1993). Reasonable evaluations of credibility and inferences of fact should not be disturbed, even if the appellate court feels that its own evaluations and inferences are as reasonable. **Rosell**, 549 So.2d at 844. Thus, where there are two permissible views of the evidence, the jury's choice between them cannot be manifestly erroneous or clearly wrong. **Id.** In conducting its review, the appellate court must be cautious not to re-weigh the evidence or substitute its own factual findings just because it would have decided the case differently. **Guillory v. Lee**, 2009-0075 (La. 6/26/09), 16 So.3d 1104, 1117.

### Bad Faith Claim

In their first two assignments of error, the Guidrys assert that the jury committed manifest error in failing to award penalties and attorney fees based upon Hudson's alleged failure to make a good faith unconditional tender under the UM

---

[2] The collusion issue is also the subject of Hudson's pending motion to strike certain portions of the Guidrys' appellate brief. Hudson contends that the Guidrys have urged unfounded arguments regarding Hudson's counsel obtaining information from Venture to use in Hudson's coverage defense. Conversely, the Guidrys aver that the trial court improperly excluded collusion evidence for presentation to the jury that was relevant to Hudson's bad faith handling of the UM claim. The Guidrys proffered the excluded evidence. We have reviewed the briefs and the entire record from the previous appeal and this appeal, as well as the proffered evidence, and we conclude that the Guidrys have sufficiently tied the collusion argument to the bad faith issue. For this reason, Hudson's motion to strike is hereby denied.

7

policy. Louisiana Revised Statutes 22:1892(A)(1) and (B)(1) subject an insurer, when it is arbitrary or capricious in failing to unconditionally tender the undisputed amount within thirty days of *satisfactory proof of loss*, to the mandatory imposition of penalties and attorney fees for the collection of such amount. **Griffin v. State Farm Mut. Auto. Ins. Co.**, 2015-0025 (La. App. 1st Cir. 9/18/15), 2015 WL 5515235, *3 (unpublished), <u>writ denied</u>, 2015-2187 (La. 1/25/16), 185 So.3d 750. Additionally, La. R.S. 22:1973 imposes an obligation of good faith and fair dealing on an insurer, including the affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured. An insurer may be subject to penalties if the insurer fails to pay a claim due an insured within sixty days of receiving *satisfactory proof of loss* when such failure is arbitrary, capricious, or without probable cause. The prohibited conduct in each statute is virtually identical, with the primary difference being the time periods allowed for payment. **Reed v. State Farm Mut. Auto. Ins. Co.**, 2003-0107 (La. 10/21/03), 857 So.2d 1012, 1020. Both statutes are penal in nature and must be strictly construed. **Id.**

One who claims entitlement to penalties and attorney fees has the burden of proving the insurer received satisfactory proof of loss as a predicate to a showing that the insurer was arbitrary, capricious, or without probable cause. **Reed**, 857 So.2d at 1020. A "satisfactory proof of loss" is that which is sufficient to fully apprise the insurer of the insured's claim. **Louisiana Bag Co., Inc. v. Audubon Indem. Co.**, 2008-0453 (La. 12/2/08), 999 So.2d 1104, 1119; **McDill v. Utica Mut. Ins. Co.**, 475 So.2d 1085, 1089 (La. 1985). To establish a "satisfactory proof of loss," the insured must show that the insurer received sufficient facts which fully apprise the insurer that (1) the owner or operator of the other vehicle involved in the accident was uninsured or underinsured, (2) that he was at fault, (3) that such fault gave rise to damages, and (4) establish the extent of those damages. **McDill**, 475 So.2d at 1089. The sanctions of penalties and attorney fees are not assessed unless

8

a plaintiff's proof is clear that the insurer was in fact arbitrary, capricious, or without probable cause in refusing to pay. **Reed**, 857 So.2d at 1021. The phrase "arbitrary, capricious, or without probable cause" is synonymous with "vexatious," and a "vexatious refusal to pay" means "unjustified, without reasonable or probable cause or excuse." **Louisiana Bag**, 999 So.2d at 1114.

An insurer's conduct depends on the facts known to the insurer or the time of its action. Penalties should not be assessed when the insurer has a reasonable basis to defend the claim and acts in good-faith reliance on that defense. **Louisiana Bag**, 999 So.2d at 1114. Especially when there is a reasonable and legitimate question as to the extent and causation of a claim, bad faith should not be inferred from an insurer's failure to pay within the statutory time limits when such reasonable doubts exist. **Reed**, 857 So.2d at 1021. In those instances where there are substantial, reasonable, and legitimate questions as to the extent of an insurer's liability or an insured's loss, failure to pay within the statutory time period is not arbitrary, capricious or without probable cause. **Louisiana Bag**, 999 So.2d at 1114. Because the question of what the insurer knew at the time of its alleged arbitrary and capricious action/behavior is essentially a factual issue, the jury's or trial court's finding should not be disturbed on appeal absent manifest error. **Louisiana Bag**, 999 So.2d at 1120; **Reed**, 857 So.2d at 1021.

Hudson contends that the Guidrys did not provide satisfactory proof of the extent and duration of Mrs. Guidry's injuries/loss connected specifically to the 2006 accident. Our review of the record reveals that, at the time that the Guidrys asserted a UM claim against Hudson in December 2009, Mrs. Guidry had just sustained her first back injury one month prior to making that UM claim. Two months after bringing the UM claim against Hudson, Mrs. Guidry sustained a second back injury and soon underwent the first of three failed back surgeries. Mrs. Guidry eventually returned to work after the 2006 accident, and worked up until the time of her first

9

back surgery in 2010. Thus, Hudson maintains that it had a reasonable basis to conclude that Mrs. Guidry's back injuries and surgeries, along with her lost wages claim, were not related to the 2006 accident. In addition, Hudson points out that it was vigorously litigating the question of insurance coverage and prescription after it was first brought into the lawsuit. The Guidrys made demand for $1.1 million dollars, an amount that was in excess of Hudson's policy limits. The various demands of the Guidrys fluctuated, with the amount of past medical expenses sometimes including the treatment for Mrs. Guidry's back injuries and sometimes not including those expenses. Consequently, Hudson constantly questioned the duration and extent, as well as causation, of all of Mrs. Guidry's injuries. Eventually, counsel for the Guidrys requested that Hudson make an unconditional good faith tender, and Hudson tendered $100,000.00 before the trial court made any ruling involving the coverage issue.

After the coverage issue was resolved against Hudson, and Venture and Zurich were both dismissed from the litigation, the Guidrys added bad faith claims against Hudson. The trial court granted Hudson's summary judgment dismissal of the bad faith claims, but this court overturned that judgment in August 2013. In October 2013, Mrs. Guidry was hospitalized several times for apparent complications of medication overuse and/or interactions. At this point in time, Mrs. Guidry was taking high doses of pain medicines daily for her back pain and daily headaches, along with other medications for anxiety and depression. Her cognitive functioning was declining. Some doctors reported that Mrs. Guidry's cognitive difficulties and constant headaches were due to overmedication. Other doctors related all of Mrs. Guidry's problems to her initial head and neck injuries from the 2006 accident. Hudson eventually made another unconditional tender of $200,000.00 to the Guidrys in June 2017, within thirty days of the supreme court's denial of supervisory review of the coverage and prescription issues.

10

While the Guidrys make much of the timing of the second unconditional tender being close in time to the supreme court ruling, Hudson contends that the more critical component of its assessment of Mrs. Guidry's loss was the evaluation of what injuries were related to the 2006 accident and the extent and duration of those injuries. Hudson also contests that Mrs. Guidry's lost-wages claim was not reasonably related to the 2006 accident, but rather was a factor only after Mrs. Guidry's unrelated back injuries occurred. Considering all of the evidence presented to the jury in connection with the bad faith claim, we find that the jury did not commit manifest error in finding that Hudson had not acted arbitrarily or capriciously in handling the Guidrys' UM claim or in the timing or amount of the unconditional tenders of the undisputed amounts due. The record reasonably supports the determination that Hudson had substantial, reasonable, and legitimate questions as to the extent of its liability *and* causation of the Guidrys' losses. Hudson possessed a good faith defense that there was a reasonable dispute concerning the extent and causation of the Guidrys' losses arising out of the 2006 accident, and its decision to tender only undisputed amounts of the UM claim were not solely tied to a dispute over the coverage and prescription issues. See **Guillory**, 16 So.3d at 1127; **Louisiana Bag**, 999 So.2d at 1117. Accordingly, we find that the jury could have reasonably concluded that Hudson was justified in relying on this good-faith belief in defending the claim, and the jury did not err in denying recovery for penalties and attorney fees under La. R.S. 22:1892 and La. R.S. 22:1973.

Motions for JNOV or alternatively New Trial

The Guidrys' third and fourth assignments of error assert that the trial court abused its discretion in failing to grant a JNOV or new trial on the bad faith issue. In ruling on a JNOV under La. Code Civ. P. art. 1811, the trial court is required to employ the following legal standard: A JNOV should be granted only if the trial court, after considering the evidence in the light most favorable to the party opposed

11

to the motion finds it points so strongly and overwhelmingly in favor of the moving party, that reasonable persons could not arrive at a contrary verdict on that issue. See **Davis v. Wal-Mart Stores, Inc.**, 2000-0445 (La. 11/28/00), 774 So.2d 84, 89; **Broussard v. Stack**, 95-2508 (La. App. 1st Cir. 9/27/96), 680 So.2d 771, 779-780. In applying this standard, the trial court cannot weigh the evidence, pass on the credibility of witnesses, or substitute its judgment of the facts for that of the jury. **Broussard**, 680 So.2d at 780. If there is substantial evidence opposed to the motion of such quality and weight that reasonable and fair-minded people in the exercise of impartial judgment might reach different conclusions, the motion for JNOV must be denied. **Id.** Thus, in reviewing a JNOV ruling, the appellate court must first determine if the trial court erred in granting or denying the JNOV using the outlined criteria. Then the appellate court must determine if the trial court's findings in rendering the JNOV ruling were manifestly erroneous. See **Davis**, 774 So.2d at 89.

Considering all of the evidence and the reasonable inferences to be made in favor of Hudson on the issue of bad faith, we cannot say that the trial court was manifestly erroneous in denying the Guidrys' motion for JNOV. The trial court could not pass on the credibility of witnesses or substitute its judgment of the facts for that of the jury. Reasonable jurors in the exercise of impartial judgment could have arrived at the same verdict given the evidence presented. Therefore, the motion for JNOV was correctly denied.

As for the Guidrys' alternative motion for new trial, the test is much less stringent than for a JNOV, because the determination does not deprive the parties of their right to have all of the disputed issues resolved by a jury. **Broussard**, 680 So.2d at 781. In considering a motion for new trial, the trial court is free to evaluate the evidence without favoring either party. The trial court may draw its own inferences and conclusions and may evaluate the credibility of the witnesses to determine if the jury has erred in giving too much credence to an unreliable witness.

12

**Id.** In such a posture, a trial court may deny a motion for JNOV but grant a motion for new trial, because the verdict is contrary to the law and the evidence. **Id.**; La. Code Civ. P. art. 1972. When considering a motion for new trial, the trial judge has wide discretion. La. Code Civ. P. arts. 1971 and 1973; **Broussard**, 680 So.2d at 781. However, that does not imply that the trial court can freely interfere with any verdict with which it disagrees. **Broussard**, 680 So.2d at 781. Additionally, the denial of a motion for new trial should not be reversed, unless there has been an abuse of the trial court's great discretion. **Id.** Moreover, jurisprudence does not favor new trials, especially when the judgment is supported by the record. **Id.**

With the aforementioned principles in mind, based upon our thorough review of the evidence in the record, it cannot be said that the trial court abused its discretion denying the motion for new trial. The trial court noted that the jury was entitled to its own fair interpretation of the evidence, and to accept Hudson's defense on the extent, duration, and causation of all of Mrs. Guidry's injuries, including the defense of medication overuse for some of Mrs. Guidry's problems. While we are mindful of the balance with which an appellate court is faced by giving the jury deference in its fact-finding role and discretion to the trial court in deciding whether to grant a new trial, we find that the jury's verdict was not clearly contrary to the law and evidence. We also conclude that the trial court was correct in finding that no miscarriage of justice resulted from the jury's verdict. The jury's verdict was supportable by a fair interpretation of the evidence as to Hudson's good faith.

Exclusion of Evidence

In their final assignment of error, the Guidrys argue that the trial court abused its discretion by excluding evidence of Hudson's alleged collusion with Venture and Zurich to the prejudice of the Guidrys' bad faith claims against Hudson. The Guidrys proffered evidence that they claim would have shown the jury that Hudson's failure to pay was not based on a good-faith defense. Hudson counters that the

13

alleged collusion or conversations with representatives of Venture and Zurich were not relevant to the issue of bad faith, and instead centered on the contested liability and coverage issues. Hudson further argues that it was entitled to a good-faith defense on the basis of medical causation that was separate from the coverage issues.

Except as otherwise provided by law, all relevant evidence is admissible. La. Code Evid. art. 402. Relevant evidence is that having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. La. Code Evid. art. 401. Whether evidence is relevant is within the broad discretion of the trial court, and its ruling will not be disturbed on appeal in the absence of a clear abuse of that discretion. **Gaspard v. Southern Farm Bureau Cas. Ins. Co.**, 2013-0800 (La. App. 1st Cir. 9/24/14), 155 So.3d 24, 31. Furthermore, error may not be predicated upon a ruling that admits or excludes evidence unless a substantial right of the party is affected. Additionally, the harmless error analysis applies to erroneous evidentiary rulings on appeal. See La. Code Evid. art. 103(A); **Travis v. Spitale's Bar, Inc.**, 2012-1366 (La. App. 1st Cir. 8/14/13), 122 So.3d 1118, 1127, writs denied, 2013-2409, 2013-2447 (La. 1/10/14), 130 So.3d 327, 329.

Our review of the proffered evidence reveals discussions and discovery pertaining to the coverage defense that was eventually resolved against Hudson before trial. Also, there was evidence of the amount of medical expenses paid by the Guidrys' healthcare insurance plan. We agree with the trial court's exclusion of this evidence, as none of it is relevant to the Guidrys' bad faith claims against Hudson or Hudson's receipt of a satisfactory proof of the Guidrys' loss specifically related to the 2006 accident. The jury received other evidence indicating that Hudson had vigorously pursued a coverage defense, as well as a causation defense, before making the second unconditional tender of undisputed funds. We find that the admission of the proffered evidence would not have changed the jury's verdict,

14

and as such, did not result in unfair prejudice to the Guidrys. Therefore, we conclude the trial court did not err in excluding the evidence.

## **CONCLUSION**

Finding no merit to the assignments of error, we affirm the trial court's judgment rendered in accordance with the jury's verdict. We also find no error in the trial court's denial of Calvin and Denise Guidry's motion for judgment notwithstanding the verdict and alternatively, motion for new trial. Calvin and Denise Guidry are cast for all appellate costs.

**MOTION TO STRIKE DENIED; TRIAL COURT JUDGMENTS AFFIRMED.**