THERIOT, J:’
lain this suit arising from an automobile accident, the plaintiff appeals the jury verdict of the Twenty-second Judicial District Court, in which the defendant driver was found to be zero percent at fault. For the reasons that follow, we affirm the judgment, and we deny the motion to supplement the appellate record.
FACTS AND PROCEDURAL HISTORY
On or about February 24, 2012, at approximately 5:30 a.m., the plaintiff-appellant Yvonne Arnaud was driving her 2001 Honda; Civic northbound along U.S. Highway 11 in Millard, Mississippi. At the same time, the defendant, Silas Sumner, III, was driving a 2009 Peterbilt tractor trailer owned by C.O.B. Enterprises of Louisiana, L.L.C. (C.O.B.), while in the course and scope of his employment with C.O.B., westbound along Savannah Millard Road. At the intersection of the two roads, the two vehicles collided as Sumner pulled into the intersection and Ms. Arnaud approached .the intersection.. At the time of the accident, Scottsdale Insurance Company (Scottsdale) maintained a liability insurance policy insuring C.O.B. and Mr. Sumner.
.. On March 26, 2012, Ms. Arnaud filed a petition for damages against Scottsdale, C.O.B., and Mr. Sumner, alleging that Mr. Sumner negligently operated his vehicle at the time of the accident, causing her injury and damages, while in the course and scope of his employment with C.O.B.
Trial by jury commenced on February 10, 2014, in Covington, .Louisiana.[1] On February 13, 2014, the jury found that Mr. Sumner was not at fault for the automobile accident. The district court incorporated the jury’s 13verdict into its judgment. Ms. Arnaud filed a motion for judgment notwithstanding the verdict and in the alternative a motion for néw trial. The motions were denied by judgment signed June 4, 2014. Ms. Arnaud timely filed a motion for devolutive appeal.
ASSIGNMENTS OF ERROR
Ms. Arnaud presents nine assignments of error:
1. It was error for the district court to deny a'JNOV because the verdict of no fault on the part of' the defen *100 dants was contrary to overwhelming evidence which clearly established the comparative fault of the defendant, Mr. Sumner.
2. The district court committed error in instructing the jury with a combination of Louisiana and Mississippi - law, which was incorrect and confusing.
3. The district court committed error in permitting the jury to take the deposition of a key defense witness ■ ' ' into the. jury room in order to transform a deadlocked jury.
4. The district court committed error in denying a new trial notwithstanding juror misconduct for failing to make full disclosure on voir dire.
5. The district court committed error in failing to inform counsel of advice that a juror had a potential familial relationship with another chosen juror.
6. The district court committed error in granting'motions to quash sub- ' poenas issued to ■ jurors when the defendants, who had no legal standing, filed such motions.
7. The district court committed error in denying recusal of defense counsel who had an inherent conflict of keenest in filing motions to quash juror subpoenas.
8. The district court committed error in granting motions to quash subpoenas necessary to confirm juror misconduct and cross examine subject jurors at an evidentiary hearing.
9. The district court committed error in denying use of a necessary video animation. .
JJIISCUSSION

Denial of JNOV

A JNOV is warranted when the facts and inferences point so strongly and overwhelmingly, in favor of one party that the district court believes that reasonable jurors could not arrive at a contrary verdict. Davis v. Wal-Mart Stores, 2000-0445 (La.11/28/00), 774 So.2d 84, 89. We find that the court did not érr in denying the JNOV.
Photographic evidence was submitted of the scene of the accident. The photographs illustrate the approach to the intersection is obstructed by the crest of a hill going northbound. At the crest of the hill is an intersection warning sign and a posted speed limit of forty-five miles per hour.
According to Mr. Sumner’s testimony, he had stopped at the intersection óf Highway 11 and Savannah Millard Road, and pulled up to a white stop bar painted on the road near the posted stop sign. The intersection was still dark at 5:30 a.m. Looking left, which was the direction from which Ms. Arnaud was approaching, Mr. Sumner did not see any oncoming traffic. Looking right, Mr. Sumner did see an approaching vehicle in the distance, but judged that he could cross the intersection in time before that vehicle reached his location. Mr. Sumner looked to the left once again and did not see approaching traffic. He then proceeded to cross the intersection.
Mr. Sumner testified that as soon as he started rolling into the intersectionj he could see the headlights of Ms. Arnaud’s vehicle approaching him from the left. Mr. Sumner then stopped his truck just before the yellow center line. Mr. Sumner testified that Ms. Arnaud’s vehicle was approaching him at a high rate of speed, and that he stopped his truck because he believed that had he moved further into the intersection, |Kthere was.the risk of Ms. Arnaud’s vehicle going underneath his trailer. Ms. Arnaud’s vehicle struck Ms. *101 Sumner’s vehicle near the rear of the truck’s cab. Mr. Arnaud estimated that at, least three seconds had elapsed from the moment he pulled into the intersection to the moment of impact.
The approaching vehicle from the right of the intersection was driven by Deputy Sergeant John Ashley Lambert of the Pearl River County Sherriff s Department. Sgt. Lambert’s deposition was admitted into evidence at the- trial. Sgt. Lambert testified that he is familiar with the intersection, and knew the posted speed limit was fifty-five miles per hour, but that at the intersection there was a warning sign that has a safe speed of forty-five miles per hour posted., Sgt. Lambert stated that, while driving home in his personal SUV at the end of his shift, he saw Mr. Sumner’s truck stopped at the intersection, then slowly start rolling into the intersection. He could not see Ms. Arnaud’s vehicle approaching at that time. When Sgt. Lambert was able to see Ms. Arnaud’s headlights, .Mr. Sumner’s vehicle was.already in motion. He witnessed Mr. Sumner stop, but could not recall if the truck was at a full stop when the collision occurred, and could not see the collision when it happened because of his viewpoint.,
Sgt. Lambert removed Ms.. Lambert from her vehicle for her own safety, then asked her how fast she had been travel-ling. He testified that Ms. Lambert told him, she had been traveling at sixty-five miles per hour. Mr. Sumner also stated at trial that he heard Ms. Arnaud say she had been travelling at that speed.
At trial, Ms. Arnaud testified that she had been traveling at fifty-five miles per hour as she reached the. crest of the hill, right before she saw Mr. Sumner’s | fitractor trailer. She did not see the warning sign that had a safe speed of forty-five miles per hour posted. When she first saw Mr. Sumner’s tractor trailer, she was already over the hill, and she testified that Mr. Sumner did not stop in the intersection, but was still moving into it. She assumed he would stop when he saw, her, but .when Mr. Sumner did not stop, Ms. Arnaud then applied her brakes,. but too late t.o avoid the collision.
Ms. Arnaud argues that'this evidence proves at the very least there is comparative fault to be apportioned between herself and Mr. Sumner, and that there is no reasonable interpretation of the evidence to allow a jury to find'that Ms. Arnaud is completely at fault. -‘We disagree. The evidencé presented by the defense puts forth the' contention that she was traveling above the posted speed limit. The defense’s evidence also suggests that the combination of Ms. Arriaud’s speed and the crest of the hill gave Mr. Sumner no time to avoid the collision, and that by stopping, he mitigated the severity of the collision.
Since the jury’s conclusion from the evidence that Ms. Arnaud was solely at fault for the accident is reasonable, the verdict cannot be overturned. See Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880, 882 (La.1993). Ms. Arnaud’s presentation of evidence presents an equally plausible interpretation of the facts, where, even if she was speeding, Mr. Sumner made a collision unavoidable by continuing to move into the intersection. The jury, however, obviously chose to disregard her version of the facts and instead agreed with the defense, and this Court cannot overturn a jury’s verdict because we may disagree with it, as long as the jury’s verdict is reasonably based on the evidence. See Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). The evidence is not overwhelmingly in -favor of Ms. Arnaud’s position, and a JNOV would not be proper in the instant case.- Ms. Arnaud’s first assignment of error is without merit.

*102
J\jChoice of Law

Initially it should be noted that Ms. Arnaud made no objection at trial as to any of the instructions the court read to the jury. Both parties agreed to the instructions after the close of evidence and prior to the closing statements, and Ms. Arnaud did not raise an objection to the instructions after they were read to the jury, or after the jury retired for deliberation. Louisiana Code of Civil Procedure art. 1793(C) states, in pertinent part:
A party may not assign as error the giving or the failure to give an instruction unless he objects thereto either before the jury retires to consider its verdict or immediately after the jury retires, stating specifically .the matter to-which he objects and the grounds of his objection....
This article requires that a party must: 1.) inform the court of the objection, and 2.) inform the court of the reason for the objection. Libersat v. J & K Trucking, Inc., 2000-0192 (La.App. 3 Cir. 10/11/00), 772 So.2d 173, 176, writ denied, 2001-0458 (La.4/12/01), 789 So.2d 598; Johnson v. Terrebonne Parish Sheriff's Office, 95-1180 (La.App. 1 Cir. 2/23/96), 669 So.2d 577, 582, writ denied, 96-0727 (La.4/26/96), 672 So.2d 907. Since Ms. Arnaud, did not make a timely objection regarding the jury instructions, her second assignment of error is not properly before this Court.

Deposition of Sgt. Lambert Provided to Jury

Ms. Arnaud’s third assignment of error concerns the trial court’s allowance of Sgt. Lambert’s deposition into the jury room for review when the jury notified the court that the jurors were deadlocked.
The jury retired for deliberation on February 13, 2014, at 3:54 -p.m. At 5:05 p.m., the jury submitted a note to the court which read, “Can we please have a copy of the jury instructions?” The request was granted. At 5:59 p.m., the jury submitted another note which read, “Can we see Sgt. Lambert’s deposition?” That request was denied. At 6:57 p.m., the jury [8submitted a third note to the court which read, “We are deadlocked and cannot reach a 9 out of 12 answer on Question No. 1; How do we proceed?”
The court discussed this third note with the parties. The parties then agreed to the giving of the deposition to the jury. After receiving the deposition, the jury reached its verdict at 7:14 p.m. •
Louisiana Code of Civil Procedure article 1794(B) states that the court may allow the jury to take with them any object or writing received in evidence, except depositions and except as otherwise provided in the Louisiana Code of Evidence. The policy underlying the prohibition of La.C.C.P. art. 1794(B) is to prevent undue weight being given depositions as against oral testimony. Salemi v. St. Paul Fire & Marine Ins. Co., 339 So.2d 1264, 1266 (La.App. 1 Cir.), writ denied, 342 So.2d 674 (La.1977).
Sgt. Lambert’s deposition testimony was submitted to the jury during the trial. The court advised the jury that it could not allow them to have a written deposition during deliberation, but that the parties had agreed for them to have access to the deposition. Counsel for the defense stated to the court, “I don’t have a problem with them having the deposition.” Counsel for Ms. Arnaud stated, “Let’s give them the deposition. Maybe they’ll get a verdict.” The court -then advised the jury it would allow them to see Sgt. Lambert’s deposition again if it would help them reach a verdict. The foreperson, Tara Cooper, replied, “I think it would.” Another juror, Robin Dutruch, agreed with her by saying, “Definitely.” The court delivered the deposition to the jury and the jury retired to *103 deliberate. During this entire time, no objection was made by either party to the jury having access to the deposition.
Failure to object to an error in a trial court at the time it is made constitutes a waiver of the right to complain of the error on appeal. Temple v. Liberty Mutual Ins., Co., 330 So.2d 891, 894 (La.1976); Belaire v. Vanderbrook, 405 So.2d 1143 (La.App. 1st Cir.1981), writs denied 407 So.2d 749 (La.1981) and 409 So.2d 659 (La.1982). We find that by not objecting at the time the deposition was given to the jury, Ms. Arnaud waived her right to object to the court’s error on appeal, This assignment of error is without merit.

Juror Conduct

Ms. Arnaud’s fourth through eighth assignments of 'error all concern issues over whether juror misconduct took place during voir dire and the trial. In' her fourth assignment of error, Ms. Arnaud claims that juror and foreperson Tara Cooper did not fully disclose her connection to the trucking industry when asked by counsel for Ms. Arnaud during voir dire.
The pertinent question posed to the jury was: “Do any one of you or your close family members or friends have anyone in the trucking industry, or drivers, that you know?” Ms. Cooper remained silent in response to that question, but had previously stated voluntarily that her husband used to drive an 18-wheeler. Ms. Arnaud now asserts that Ms. Cooper, along with her husband, are owners of a commercial trucking company called Coop’s Trucking, LLC, which is registered with the Louisiana Secretary of State.
After the trial, Ms..Arnaud subpoenaed Ms. Cooper to question her regarding her relationship to Coop’s Trucking, and Mrs. Cooper appeared in court on May 14, 2014, to answer Ms. ■ Arnaud’s questions. At that hearing, Ms. Cooper stated she recalled raising her hand for several of Ms. Arnaud’s questions on voir dire,' possibly the question at issue, but that counsel for Ms. Arnaud would not call on her, and she would eventually put her hand down. "Ms. Cooper státed that she never believed that she or her husband were owners of a trucking company, because- although they had registered | mCoop’s Trucking with the Secretary of State, they had done nothing else and she had forgotten about it. -
The articles of organization for Coop’s Trucking show Ms. Cooper’s signature, and that she is designated a registered agent and member/manager. Ms. Cooper acknowledged the signature. Ms. Cooper claims she would have volunteered this information had she.remembered that she and her husband had filed the articles, but they had never done anything further with the company.
Louisiana Code of Civil Procedure article 1972(3) states that a new trial shall be granted when the jury has behaved improperly so that impartial justice has not been done. Under Louisiana law, not every instance of jury or juror misconduct necessitates the granting of a new trial or the remand of a case for a new trial. The trial judge has much discretion in determining whether tb grant á motion for a new trial. Brown v. Hudson, 96-2087 (La.App. 1 Cir. 9/19/97), 700 So.2d 932, 935, writ denied, 97-2623 (La.1/9/98), 705 So.2d 1103, cert. denied, 524 U.S. 916, 118 S.Ct. 2297, 141 L.Ed.2d 157(1998).
When Ms. Arnaud introduced the articles of organization into evidence,. the trial court stated that Ms. Cooper never operated a trucking business, and the evidence merely showed, that the Coopers registered the name “Coop’s Trucking, LLC” with the Secretary of State, which could potentially become the name of a business of any kind, not necessarily truck *104 ing. We,agree with the trial court’s assessment of this evidence. Ms.. Arnaud did not meet her burden in proving that Ms. Cooper’s failure to disclose submission of the articles .of organization .rose to a level of impartiality which would require a new trial. A decision to deny a motion for new trial based upon jury misconduct is reviewed pursuant to an abuse . of Indiscretion standard. Brown, 700 So.2d at 935. The trial court did not abuse its discretion in denying a new trial based on Ms. Cooper’s conduct, and this assignment of error is without merit.
In her fifth assignment of error, Ms. Arnaud claims misconduct on the part of Ms. Cooper for failing to disclose a familial relationship she had with another juror, Robin Dutruch. Ms. Cooper’s maiden name is also Dutruch. When asked about the disclosure of her maiden name, Ms. Cooper testified:
I came in that Tuesday morning after — we were selected ... I had notified the bailiff that I could possibly be related to someone on the jury, just because I didn’t know thé proper spelling and pronunciation of the name. I thought it could be close to mine.
At that point he had referred back to me, and had said- it was referred back to the judge. And I guess it was okay at that point. And I just asked her at that time did you say your last name was Dutruch because not many people have that last name that I know of. And I’ve never met her before in my life. And I was just unsure. After it was brought back to my attention that the judge said it was okay. And at that point she said yes. But we still never knew a connection.
The trial court verified that Ms. Cooper did report a possible relation between her and Ms. Dutruch, but that they did not know each other, and therefore the issue had no bearing on the trial. The trial court acknowledged that the above discussion was done outside 'the presence of Ms. Arnaud’s counsel and was never disclosed to him. Ms. Arnaud introduced evidence at trial of a conversation between Ms. Cooper and Ms. Dutruch on Facebook, dated as beginning on February 13, 2014 and ending the next day where they discovered that they were fourth cousins.[2] Ms. Dutmch was also called to testify at the hearing, and she acknowledged having the Facebook conversation with Ms. Cooper. She also verified that she had never met Ms. Cooper before being selected to sit on the jury for the trial.
112We do not have to determine whether the trial court1 committed reversible error in failing to disclose to Ms. Arnaud’s counsel the conversation between Ms. Cooper and the bailiff regarding the possible familial relationship. Upon discovering the similarity between their names, Ms. Cooper promptly informed the bailiff. The court' verified that Ms. Cboper and Ms. Dutruch had never met each other and did not know one another. As they were complete strangers to one another, Ms. Ar-naud has not shown how their having a surname and a maiden name in common created any partiality within either juror. Since their Facebook conversation where they did discover they were related occurred after the verdict'had been reached, it can have no bearing on the outcome of the trial. This assignment error is without merit.
In her sixth assignment of error, Ms. Arnaud claims the trial court erred in quashing her subpoenas in connection with *105 the issues in the fourth and fifth assignments of error. The defense filed a motion to quash Ms. Arnaud’s subpoenas duces tecum of C.O.B., Ms. Dutruch, Ms. Cooper, and her husband Brandon Cooper.
Regarding C.O.B., Ms; Arnaud sought information regarding all of C.O.B?s employees and/or independent contractors from 2007 to the present. The defense suspected that the reason for this subpoena was to establish a business or employment relationship between Coop’s Trucking or Mr. Cooper, who once drove an 18-wheeler, and C.O.B., a trucking company. Regarding Ms. Dutruch, Ms. Arnaud sought her social media history to establish her familial relationship with Ms. Cooper. Regarding Mr. and Ms. Cooper, Ms. Arnaud sought all tax returns they filed since 2007 and all financial records of Coop’s Trucking. The defense in response submitted to the trial court the affidavit of Clint Bryant, manager of C.O.B., wherein he | ^attests that C.O.B. has never had any •business relationship with either -Coop’s Trucking, Mr. Cooper, or Ms. Cooper.
On May 2, 2014, the trial court granted the motions to quash the subpoenas duces tecum regarding Ms. Dutruch and Ms. Cooper, with the exception of the social media documents that Ms. Dutruch had already produced voluntarily which would be made available to the trial court and the parties.[3] In a separate judgment on the same date, the trial court granted the motions to quash regarding the subpoenas issued to C.O.B. and Mr. Cooper, but ordered that Mr. Cooper respond on the record as to whether he or Coop’s Trucking ever received a financial sum from C.O.B. C.O.B. had responded to its subpoena, simply stating that it had no records showing that Brandon Cooper or Coop’s Trucking ever had any kind of relationship or received money from C.O.B.
Ms. Arnaud argues that the defense did hot have standing to file their motions to quash on behalf of Ms. Dutruch and the Coopers since they were hot clients of defense counsel. In fact, the Coopers had hired- their own counsel after they were served with the subpoenas. •
While La.C.C.P. art, 1354 only contemplates motions to quash filed by the party on whom the subpoena is served, it is not necessary for.us to consider whether the defense had legal standing to quash the subpoenas. The printouts of the Facebook conversation offered by Ms. Dutruch already establish that neither she. nor Ms. Cooper knew of any relationship they might have had prior to the "trial, and they did not know each other prior to the trial. The affidavits and responses of C.O.B, establish no relationship of any kind with Coop’s Trucking or the Coopers. It would therefore be unnecessary for C.O.B. or the Coopers to divulge their own financial records |utb prove what had already been proven. The trial court whs satisfied that there was no evidence of juror misconduct, and we have stated that there was no abuse of discretion.' There was no need for a superfluous production of documents that would have impaired the trial court’s efficiency. This assignment of error is without merit.
, Likewise, there is no need to consider Ms. Arnaud’s seventh assignment of error dealing with whether counsel for the defense should have been recused for having a conflict of interest in filing motions to quash on behalf of the jurors. Defense counsel acknowledged that he did not represent Ms. Dutruch or the Coopers. Be *106 yond that, we do not have to determine if he acted as their attorney in filing the motions to quash. The motions were filed on behalf of Mr. Sumner, C.O.B., and Scottsdale, who were represented by defense counsel. A running defect in Ms. Arnaud’s argument concerning the juror misconduct is- that there is evidence that the misconduct existed. As set forth above, the new trial and motion to quash hearings proved the exact opposite. Even if defense counsel were recused, it would have no effect on what the evidence has established. This assignment of error is without merit. For the same reasons, the eighth assignment of error pertaining to juror misconduct is without merit.

Denial of Video Animation

Ms. Arnaud has filed a motion to supplement the appellate record with this Court which is intertwined with her ninth assignment of error. Both concern a DVD containing video animation that depicted a ten-second realtime sequence of events that occurred prior to the vehicle collision. Ms. Arnaud’s expert planned on using the animation to explain to the jury his position concerning Mr. Sumner’s fault in the accident. The defense objected to the admission of the animation, questioning its accuracy and | ^foundation. The DVD was played for the court outside the presence of the jury, and at the end of the viewing, the court ruled the DVD inadmissible. Counsel for Ms. Arnaud then stated he intended to play the video for the jury in his closing argument.
Ms. Arnaud argues that since the video was viewed in open court, it should have been made part of the appellate record so that her assignment of error can be fairly reviewed by this Court. Louisiana Code of Civil Procedure article 2132 states:
A record on appeal which is incorrect or contains misstatements, irregularities or informalities, or which omits a material part of the trial record, may be corrected even after the record is transmitted to the appellate court, by the parties by stipulation, by the trial court or by the order of the appellate court. All other questions as to the content and form of the record shall be presented to the appellate court.
However, La.C.C.P. art. 2164 provides that “[t]he appellate court shall render any judgment which is just, legal, and proper upon the record on appeal.” An appellate court must render its judgment based on the record on appeal and cannot consider evidence that is not part of the record. J. Ray McDermott, Inc. v. Morrison, 96-2337 (La.App. 1 Cir. 11/7/97), 705 So.2d 195, 201, writs denied, 97-3055, 3062 (La.2/13/98), 709 So.2d 753, 754.
Ms. Arnaud cites no law supporting her assertion that, once the court viewed the animation in open court, it should have become part of the appellate record. Louisiana Code of Civil Procedure article 1636 provides, in pertinent part:
A. When the court rules against the admissibility of any evidence, it shall either permit the party offering such evidence to make a complete record thereof, or permit the • party to make a statement setting forth the nature of the evidence.
C. In all cases, the court shall state the reason for its ruling as to the inadmissibility of the evidence. This ruling shall be [ Tfireviewable on appeal without the necessity of further formality.
The transcript reveals nothing about a proffer of the animation. Generally, when a party fails to proffer excluded evidence, it is unavailable on appellate review. See Galloway v. Lolley, 44,501 (La.App. 2 Cir. 8/19/09), 17 So.3d 479, 481; see also Williams v. Williams, 2006-2491 (La.App. *107 1 Cir. 9/14/07), 970 So.2d 633, 640. In the instant case, in response to the defense’s objection to the animation, counsel for Ms. Arnaud admitted that he did not have a witness to lay the foundation for how the video was prepared. He however stated that:
[T]he information is there in the animation, Your Honor. It has a time sequence — actually, based on the defense’s expert, of ten seconds from the crest of the hill to impact. And the speed at 55 miles per hour. And also the speed of Lambert’s vehicle at 40 miles per hour. It shows two-views.' It’s only 30 seconds.
Counsel for Ms. Arnaud made this statement prior to showing the video to the trial court. Once the video was shown, the trial court ruled it as inadmissible. Counsel for Ms. Arnaud then, instead of proffering the video, stated that he intended to use the video in the closing statement, which the trial court indicated it would allow, but for whatever reason, he did not do. Closing statements are not to be considered as evidence.- See State v. Trahan, 2011-1609 (La.7/2/12), 97 So.3d 994, 998. Ms. Arnaud now appeals claiming that the video animation ■ should be added to the record as evidence when it was previously designated as not being evidence. This- assignment of error is without merit, and Ms. Arnaud’s motion to supplement the appellate record is denied.
CONCLUSION
Evidence existed in this case from which a jury could reasonably conclude that Ms. Arnaud was completely at fault in the collision. A new 117trial or a JNOV was therefore not warranted. A new trial or JNOV cannot be granted on any issue that was not contemporaneously objected to at trial. Since counsel for Ms. Arnaud did not object to the instructions read to the jury, that issue is not before us, and- since both parties acquiesced in the allowance of the jury to review Sgt; Lambert’s deposition at deliberation, the objection to same by Ms. Arnaud on appeal was waived. All of Ms. Arnaud’s claims surrounding juror misconduct hinge upon whether there is evidence that misconduct existed, and there is no such evidence. It was unnecessary and improper for Ms. Arnaud to call Ms. Du-truch, Ms. Cooper, and Mr. Cooper (who was not a juror) into court for what the defense correctly identified as a “fishing expedition,” when Ms. Arnaud had no realistic idea what her subpoenas would yield. Lastly, the video animation that Ms. Ar-naud wants to place into the record was not .handled or designated as evidence at the trial; therefore, we will not designate it as such now.
DECREE
The judgment.of the Twenty-Second Judicial District Court, adopting the jury’s verdict in favor of the appellees, Scottsdale Insurance Company, C.O.B. Enterprises of Louisiana, L.L.C., and Silas Sumner, III, is affirmed. The motion to supplement the appellate record filed by Yvonne Arnaud is denied. All costs of this appeal are assessed to the appellant, Yvonne Arnaud.
MOTION DENIED; JUDGMENT AFFIRMED.
McCLENDON,’J., concurs and assigns reasons.
McDONALD, j., agrees.

. Mr. Sumner is a resident of Poplarville, Mississippi. C.O.B. is a coiporation domiciled in the Parish of St. Tammany. 'Scott-dale is licensed to do business in Louisiana. Venue is proper in the 22nd JDC under La. C.C.P. art 42(2), which states an action against a domestic corporation and/or a domestic insurer shall be brought in the parish where its registered office is located.

.. The evidence only shows dates as starting "2/13, 9:41pm” • and, ending as “2/14> 7:12pm,” but it was adduced at the hearing that the- conversation took place .post-verdict.

. The printout of the Facebook conversation ’ was not admitted as evidence but was entered into the record as a proffer by Ms. Arnaud,