STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NUMBER 2019 CA 0122

PATRICIA SETTOON

VERSUS

JUAN MORALES, PLANT PERFORMANCE SERVICES, LLC,
CONTINENTAL CASUALTY COMPANY, APRIL BURNS, STATE FARM
MUTUAL AUTOMOBILE INSURANCE COMPANY & ALLSTATE
INSURANCE COMPANY

Judgment Rendered: ___SEP 2 7 2019___

Appealed from the
Eighteenth Judicial District Court
In and for the Parish of Iberville
State of Louisiana
Docket Number 74849

Honorable Alvin Batiste, Jr., Judge Presiding

*************

| | |
|---|---|
| Scott M. Emonet<br>Baton Rouge, LA | Counsel for Plaintiff/Appellee,<br>Patricia Settoon |
| Azelie Ziegler Shelby<br>Sarah K. Lunn<br>Stephanie L. Willis<br>Baton Rouge, LA | Counsel for Defendants/Appellants,<br>Juan Morales, Plant Performance<br>Services, LLC & Continental<br>Casualty Company |
| Sandra S. Rester<br>Baton Rouge, LA | Counsel for Third Party<br>Defendant/Appellee,<br>State Farm Mutual Automobile<br>Insurance Company and April<br>Burns |

*************

BEFORE: WHIPPLE, C.J., GUIDRY, AND CRAIN, JJ.

**WHIPPLE, C.J.**

In this automobile accident case, defendants, Juan Morales, Jr., Plant Performance Services, LLC, and its insurer, Continental Casualty Company, appeal from a judgment of the trial court rendered in conformity with a jury's verdict in favor of plaintiff, Patricia Settoon, and third party defendant, April Burns. For the reasons that follow, we amend the judgment in part and affirm as amended.

## FACTS AND PROCEDURAL HISTORY

On the morning of June 25, 2014, Mrs. Settoon, left her home in Plaquemine, Louisiana, and was traveling in her Buick Enclave heading north on Louisiana Highway 30 ("Hwy. 30") to a medical appointment on Bluebonnet Boulevard in Baton Rouge. From the time she got onto Hwy. 30, Mrs. Settoon traveled behind an orange/red Chevrolet Avalanche truck driven by Ms. April Burns. Although the speed limit was 55 miles per hour on Hwy. 30, Ms. Burns and Mrs. Settoon testified that they were traveling at a speed of 40 to 45 miles per hour with a distance of approximately three to four car lengths between them.

Mr. Morales was traveling South on Hwy. 30 in a Ford 250 extended cab truck, pulling a twenty foot trailer carrying a 6,000-pound forklift. Mr. Morales through his employment as a project superintendent for Plant Performance Services, was in the process of transporting equipment from their office location on Highland Road to a new office location on Hwy. 30.

When Mr. Morales arrived at the business location, he attempted to make a left turn into the first of two driveways entering the property, pulling into the path of Ms. Burns and Mrs. Settoon, who were approaching from the opposite direction. Upon Mr. Morales's vehicle and trailer turning in front of her, Ms. Burns applied her brakes and quickly looked into her rear-view mirror. She noticed Mrs. Settoon following behind her. Ms. Burns then "swerved" around Mr. Morales's trailer,

2

which was in the northbound lane of Hwy. 30, to avoid hitting it. When Mrs. Settoon, who was following Ms. Burns, noticed Ms. Burns's brake lights come on, she applied her brakes and quickly realized that she had to take the right shoulder or she would hit Ms. Burns's vehicle from the rear. Mrs. Settoon testified that she could not "slam" on her brakes because a vehicle was following "very close" behind her. Mrs. Settoon then went to the right shoulder to avoid hitting Ms. Burns's vehicle and collided with the rear portion of Mr. Morales's trailer on the shoulder of Hwy. 30. The impact of the collision caused eight airbags in Mrs. Settoon's vehicle to deploy and ultimately rendered her vehicle a total loss as a result of the damages her vehicle sustained from the impact of the collision. Mrs. Settoon hit her head upon impact and was subsequently transported by ambulance to St. Elizabeth Hospital in Gonzales, Louisiana, for treatment.

Mrs. Settoon subsequently filed a petition for damages against Mr. Morales, Plant Performance Services, LLC, and its insurer, Continental Casualty Company for injuries she sustained in the accident.[1] Mrs. Settoon averred therein that the accident was caused solely by the fault of Mr. Morales in: (1) failing to keep a proper lookout; (2) failing to keep his vehicle under proper control; (3) failing to properly maintain the vehicle; (4) failing to see what he should have seen and if had seen, in failing to heed; (5) failing to stop; (6) failing to maintain control; (7) operating his vehicle in a wanton and reckless manner with no regard for the rights and safety of others; and (8) making a left turn in front of Ms. Settoon's vehicle. The defendants filed an answer and third party demand against Ms. Burns and her insurer, State Farm Mutual Automobile Insurance ("State Farm"), contending that Ms. Burns was at fault in causing the accident herein.

---

[1]Mrs. Settoon's medical payments insurer, Allstate Insurance Company ("Allstate"), filed a petition to intervene to recover medical payments made to or on behalf of Mrs. Settoon for injuries she sustained in the accident. However, Allstate subsequently filed a motion to dismiss its claims with prejudice.

The matter ultimately proceeded to trial before a jury, and following a four-day trial, the jury returned a verdict, finding Mr. Morales was solely at fault in causing the accident and awarding Mrs. Settoon the following damages:

| | |
|---|---|
| Past Medical Expenses | $36,074.42 |
| Future Medical Expenses | $100,000.00 |
| Past Physical Pain and Suffering | $65,000.00 |
| Future Physical Pain and Suffering | $250,000.00 |
| Loss of Enjoyment of Life | $25,000.00 |

In conformity with the jury's verdict, a judgment awarding general and special damages, with interest, in the amount of $476,074.42 in favor of Mrs. Settoon and against defendants, was signed by the trial court on October 25, 2018. The judgment further provided that the defendants' third party claims against Ms. Burns and State Farm were dismissed with prejudice.[2]

The defendants then filed the instant suspensive appeal from the judgment of the trial court, assigning the following as error:

---

[2] "A final judgment shall be identified as such by appropriate language." LSA-C.C.P. art. 1918. It is also well settled that a final judgment must be precise, definite, and certain, Advanced Leveling & Concrete Solutions v. Lathan Company, Inc., 2017-1250 (La. App. 1st Cir. 12/20/18), 268 So. 3d 1044, 1046, and must contain decretal language. Carter v. Williamson Eye Center, 2001-2016 (La. App. 1st Cir. 11/27/02), 837 So. 2d 43, 44. Generally, it must name the party in favor of whom the ruling is ordered, the party against whom the ruling is ordered, and the relief that is granted or denied. Carter v. Williamson Eye Center, 837 So. 2d at 44. The failure to name the defendant or defendants against whom the judgment is rendered in a case with multiple defendants renders the judgment fatally defective because one cannot discern from its face against whom it may be enforced. Jenkins v. Recovery Technology Investors, 2002-1788 (La. App. 1st Cir. 6/27/03), 858 So. 2d 598, 600.

As pertinent to the instant matter, the second page of the judgment provides that judgment is rendered in favor of plaintiff, Patricia Settoon, and third party defendant, April Burns, and "against Defendants, Juan Morales, et al" without specifically and individually re-naming each defendant against whom it is rendered. However, the first page of the judgment clearly identifies the counsel of record who were present at trial and their respective clients, specifically naming the defendants, Juan Morales, Plant Performance Services, LLC, and Continental Casualty Company. Thus, because we can discern the parties against whom the ruling is rendered from the face of the judgment and from a reading of the judgment as a whole, we find that the judgment herein is sufficiently definite as to constitute a discreet, final judgment. See Welch v. Planning and Zoning Commission of East Baton Rouge Parish, 2018-0197, p. 4 (La. App. 1st Cir. 5/9/19), __ So. 3d __, __, (citing Conley v. Plantation Management Company, L.L.C., 2012-1510 (La. App. 1st Cir. 5/6/13), 117 So. 3d 542, 547, writ denied, 2013-1300 (La. 9/20/13), 123 So. 3d 178). However, for clarity, we will amend the judgment to include in the decree the proper names of the defendants as earlier specified in the judgment.

4

1. The trial court erred in failing to fully conduct the three-step process required by <u>Batson</u> and its progeny, permitting the plaintiff and third party defendant to engage in purposeful discrimination in exercising peremptory challenges, which deprived defendants of a fair and impartial jury.

2. The trial court erred in failing to provide defendants with its jury instructions within a reasonable time prior to their closing arguments. This error was compounded because the instruction given was incomplete and not supported by the evidence, rendering the instructions confusing and misleading to the jury.

3. The jury committed manifest error in allocating 100 percent fault to defendant Mr. Morales when the only testimony to support this allocation was that of third party defendant Ms. Burns, and Ms. Burns's testimony was so internally inconsistent and implausible on its face that a reasonable factfinder could not credit it.

4. The jury committed manifest error in its award of damages where the special damages were not supported by the record, and the plaintiff failed to mitigate her damages.

## DISCUSSION

### Peremptory Challenges - <u>Batson</u>
### (Assignment of Error Number One)

In their first assignment of error on appeal, defendants contend that the trial court committed legal error by failing to employ the three-step process articulated in <u>Batson v. Kentucky</u>, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), alleging that "every white person had been systematically stricken by opposing

counsel."[3] The defendants further contend that when presented with reasons for striking jurors, the trial court "rubber-stamped" the reasons without performing the last step in the Batson analysis, and that the reasons asserted by plaintiff and third party defendant for striking white jurors were a pretext for discrimination, where similarly situated black juror were not struck. Defendants suggest that as a result, the proper remedy is for this court to remand the matter for a new trial.

A private litigant in a civil case may not use peremptory challenges to exclude jurors on the account of race. To do so is a violation of the Equal Protection Clause. Edmonson v. Leesville Concrete Company, Inc., 500 U.S. 614, 616, 111 S. Ct. 2077, 2080, 114 L. Ed. 2d 660 (1991); see also Grayson v. R.B. Ammon and Associates, Inc., 99-2597 (La. App. 1st Cir. 11/3/00), 778 So. 2d 1, 7, writs denied, 2000-3270 (La. 1/26/01), 782 So. 2d 1026 and 2000-3311 (La. 1/26/01), 782 So. 2d 1027.

Batson and its progeny provide a three-step process to guide courts in evaluating a claim of racial discrimination in the *voir dire* process. State v. Crawford, 2014-2153 (La. 11/16/16), 218 So. 3d 13, 30. First, the challenging party must make a *prima facie* showing that the opposing party exercised a peremptory challenge on the basis of race. To establish a *prima facie* case, the defendant must show: (1) the challenge was directed at a member of a cognizable group; (2) the challenge was peremptory rather than for cause; and (3) relevant circumstances sufficient to raise an inference that the prospective juror was struck on account of his being a member of that cognizable group. See Batson, 476 U.S. at 96, 106 S.Ct. at 1723. Without an inference that the prospective jurors were

---

[3] Although Batson was a criminal case, the United States Supreme Court has extended Batson to civil cases, holding that a private litigant in a civil case may not use peremptory challenges to exclude jurors on the account of race and that to do so is a violation of the Equal Protection Clause. See Edmonson v. Leesville Concrete Company, Inc., 500 U.S. 614, 615, 111 S.Ct. 2077, 2080, 114 L.Ed.2d 660 (1991); see also Grayson v. R.B. Ammon and Associates, Inc., 99-2597 (La. App. 1st Cir. 11/3/00), 778 So. 2d 1, 7, writs denied, 2000-3270 (La. 1/26/01), 782 So. 2d 1026, 2000-3311 (La. 1/26/01), 782 So. 2d 1027.

stricken because they are members of the targeted group, the defendant is unable to make a *prima facie* case of purposeful discrimination and his <u>Batson</u> challenge expires at the threshold. See <u>Williams v. Hendry</u>, 2015-0104, p. 11 (La. App. 1st Cir. 9/18/15) (unpublished). In reference to this showing, the <u>Batson</u> Court stated:

> In deciding whether the defendant has made the requisite showing, the trial court should consider all relevant circumstances. For example, a "pattern" of strikes against black jurors included in the particular venire might give rise to an inference of discrimination. Similarly, [counsel's] questions and statements during *voir dire* examination and in exercising his challenges may support or refute an inference of discriminatory purpose. These examples are merely illustrative. We have confidence that trial judges, experienced in supervising *voir dire,* will be able to decide if the circumstances concerning [counsel's] use of peremptory challenges creates a *prima facie* case of discrimination against black jurors.

<u>Batson</u>, 476 U.S. at 96, 106 S.Ct. at 1723 (emphasis added).

Once a *prima facie* showing is made, the burden then shifts to the opposing party to articulate a race-neutral explanation for striking the jurors in question that is related to the case to be tried. See <u>Batson v. Kentucky</u>, 476 U.S. at 96-98, 106 S.Ct. at 1723-1724. A neutral explanation is one that is based on some factor other than the race of the juror excused. <u>Grayson v. R.B. Ammon and Associates, Inc.</u>, 778 So. 2d at 8. This second step of the process does not demand an explanation that is persuasive, or even plausible, and unless a discriminatory intent is inherent in the stated reasons, the explanation given should be deemed race-neutral. <u>Grayson v. R.B. Ammon and Associates, Inc.</u>, 778 So. 2d at 8.

In the final step of the analysis, the trial court must determine whether the party raising the <u>Batson</u> challenge has carried his burden of proving purposeful discrimination. In most cases, this consists of a ruling on the credibility of the attorney exercising the challenge. At this final stage, the trial court must consider the persuasiveness of the explanations. It is at this stage that implausible or fantastic justifications may be found to be pretexts for purposeful discrimination. The trial court's conclusion on the ultimate question of discriminatory intent is a

7

finding of fact that is accorded great deference on appeal.  Grayson v. R.B. Ammon and Associates, Inc., 778 So. 2d at 8.

In the instant case, after eleven jurors had been impaneled, while not objecting to a challenge to any juror in particular, defense counsel made an observation that the jury was primarily composed of black jurors, as shown in the following colloquy:[4]

> **[Counsel for defendants]:**  Your Honor, before we begin, I'd like to bring something to the Court's attention.  This is a current makeup of our jury.  It's basically all black females.  There's one white person on this jury.  Every white person has been systematically struck.

> **THE COURT:**  So you want to do a Batson challenge?

> **[Counsel for defendants]:**  I mean, I think –

> **[Counsel for third party defendant]:**  We're not done yet either.

> **[Counsel for defendants]:**  Well, right now we have one, two, three, four, five, six, seven black females; three black males; and one white male.  I mean, I think that there's a pattern because what we've actually have had –

> **[Counsel for plaintiff]:**  Some of them have been cuts by [counsel for defendants].

> **THE COURT:**  Right.

In response to this general observation by defense counsel, the trial court reviewed the challenges to white potential jurors to determine whether the defendants made a *prima facie* showing that the challenges were exercised on the basis of race.  After reviewing the challenges, the trial court determined that the defendants had not established a basis for a Batson challenge, noting that it did not see a pattern of striking potential jurors for racial reasons.  The trial court further observed that counsel for the defendants had used as many peremptory challenges

---

[4]To the extent that it may be relevant to the Batson analysis, we note that Mrs. Settoon is a white female.

8

on potential white jurors as were exercised by opposing counsel. Thus, the trial court denied defense counsel's Batson challenge.

Considering the great deference afforded the trial court's factual findings, and after thorough review of the transcript of the selection process herein, we find no error in the trial court's conclusion that the defendants failed to make a *prima facie* showing that the peremptory challenges were exercised on the basis of race. In doing so, we note that the defendants, who had the burden of proof on the issue, failed to produce sufficient evidence to permit the trial court to raise an inference that a prospective juror was struck on account of his being a member of a cognizable group. Accordingly, based on the evidence of record and credibility determinations, no manifest error in the trial court's determination that defendants failed to establish a prima facie case showing that plaintiff and third-party defendants exercised peremptory challenges on the basis of face.

Nonetheless, to the extent that defendants argue that the first prong of Batson is mooted because race-neutral reasons were offered for use of the peremptory challenges,[5] we note that even if defendants had made the requisite *prima facie* showing and the burden had shifted to opposing counsel, we find that the explanations offered by counsel for plaintiff and third party defendant were valid and related to the case.

Based on our review of the record, we are able to determine that counsel for plaintiff struck prospective white jurors Hergruder, Snellgrove, Wunstell, and Young. Prospective juror Hergruder was struck because she indicated that she had been involved in a rear-end accident and that she knew someone who had a tumor. Hergruder also revealed in *voir dire* that she was friends with someone with whom Mrs. Settoon had taught. Prospective juror Snellgrove was struck because he was a

---

[5]See State v. Nelson, 2010-1724, 2010-1726 (La. 3/13/21), 85 So. 3d 21, 29.

safety instructor. The record does not reveal any discussion concerning prospective jurors Wunstell and Young.

Counsel for third party defendant struck prospective white jurors Lloyd Morgan, Campbell, McNeil, Joe Morgan, and Tullier. Prospective juror Lloyd Morgan was struck by counsel for third party defendant because "he drives a truck" and had been "involved in a couple of accidents." Prospective juror Campbell was struck because she indicated that she had been involved in other wrecks, including a hit and run accident. Prospective juror McNeil was struck because her husband was a physician and had been named as a defendant in lawsuits. There was no discussion of the reasons for striking Joe Morgan or Tullier.

In addition, counsel for defendants struck prospective white jurors Alleman, Daniel, and Wunstell. Prospective juror Alleman was struck because he indicated that he knew the Settoon family, although when questioned further, he admitted that he did not know Mrs. Settoon. Prospective juror Daniel was struck with no explanation provided, however, Daniel had previously stated in *voir dire*, "[y]ou need to be accountable for your own actions, and if the accident was your fault, something that you did, then you need to be accountable for it." There was no discussion of the reason defendants struck prospective juror Wunstell.

Considering that we find no error in the trial court's determination that defendants failed to establish a *prima facie* showing that the peremptory challenges were exercised on the basis of race, we reject the defendants' contention that the trial court was nonetheless required and failed to adequately articulate reasons or require a response for striking each potential white juror. Even if the issue was properly before us, we note that this determination necessarily involves a credibility determination and find that the record provides sufficient support. Cf. Grayson v. R.B. Ammon and Associates, Inc., 778 So. 2d at 9 and Banks v. First

<u>Guaranty Bank of Hammond</u>, 2013-0607 at p. 3 (La. App. 1st Cir. 2/25/14) (unpublished).

Accordingly, we find no merit to this assignment of error.

**Jury Instructions**
**(Assignment of Error Number Two)**

In their second assignment of error, defendants contend that the jury instruction setting forth the provisions of LSA-R.S. 32:296 was unnecessary and incomplete because the instruction did not define certain terms within the statute.[6] The defendants further argue that defense counsel was not given sufficient time to review the instructions and "formulate objections" prior to closing arguments. In doing so, defendants acknowledge that they failed to offer a contemporaneous objection to the instructions and further acknowledge that although a jury charge conference was held in the trial judge's chambers, there is no record or timeline of these events.

After a thorough review of the transcript, we find that at no time prior, during, or after the instructions were read to the jury did defense counsel lodge an objection on the record or request additional time to review the jury charges in order to formulate objections thereto. Instead, after the instructions were read to the jury and the jury exited the courtroom, the trial judge asked all counsel, "Are there any objections to any instructions that I did give or any objections to any instructions requested that I did not give?" Notably, counsel for the defendants replied that she had no objections.

Louisiana Code of Civil Procedure article 1793(C) provides, in pertinent part, that:

---

[6]The jury instruction provided as follows:

> Louisiana Revised Statute 32:296 states, "No person shall stop, park, or leave standing any unattended vehicle on any state highway shoulder, unless such stopping, parking, or standing is made necessary by an emergency."

11

A party may not assign as error the giving or the failure to give an instruction **unless he objects** thereto either before the jury retires to consider its verdict or immediately after the jury retires, stating specifically the matter to which he objects and the grounds of his objection. [Emphasis added.]

This statute requires that a party must: (1) inform the court of the objection; and (2) inform the court of the reason for the objection. See Arnaud v. Scottsdale Insurance Company, 2014-1809 (La. App. 1st Cir. 9/18/15), 182 So. 3d 97, 102. The defendants herein simply failed to do either below to preserve this issue for review.

Because the defendants failed to timely object to the jury instructions below, they have waived their right to raise the issue on appeal.[7] See Arnaud v. Scottsdale Insurance Company, 182 So. 3d at 102 and M & R Drywall, Inc. v. MAPP Construction, LLC., 2017-0186, 2017-0187, 2017-0188, p. 16 (La. App. 1st Cir. 4/29/19), ___ So. 3d ___, ___.

This assignment lacks merit.

### Apportionment of Fault
### (Assignment of Error Number Three)

In this assignment of error, the defendants contend that the jury erred in allocating 100% fault to Mr. Morales.

As a reviewing court, this court must give great deference to the allocation of fault as determined by the trier of fact. Fontenot v. Patterson Insurance, 2009-0669 (La. 10/20/09), 23 So. 3d 259, 274. The allocation of fault is within the sound discretion of the trier of fact and will not be disturbed on appeal in the absence of manifest error. Edmond v. Cherokee Insurance Company, 2014-1509 (La. App. 1st Cir. 4/24/15), 170 So. 3d 1029, 1036-1037. The manifest error standard demands great deference to the fact finder's conclusions; for only the fact

---

[7]To the extent that the defendants argue that the jury instructions contain a "plain and fundamental error," such that the contemporaneous objection rule is relaxed and appellate review is not prohibited, we reject the notion that the complaints as set forth in brief by the defendants constitute plain and fundamental errors.

12

finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Rosell v. ESCO, 549 So. 2d 840, 844 (La. 1989). The trier of fact is charged with assessing the credibility of the witnesses and, in doing so, is free to accept or reject, in whole or in part, the testimony of any witness. Johnson v. State Through Department of Transportation and Development, 2017-0973, 2017-0974, (La. App. 1st Cir. 4/3/19), 275 So. 3d 879, 904. If the jury's findings are reasonable after reviewing the record, we cannot reverse those findings even if we may have decided differently had we been sitting as the trier of fact. Rosell v. ESCO, 549 So. 2d at 844.

All motorists owe a general duty to observe what should be observed. Lopez v. Cosey, 2016-0812, 2016-0813 (La. App. 1st Cir. 2/17/17), 214 So. 3d 18, 23. A motorist has a duty to drive in a careful and prudent manner, so as not to endanger the life, limb, or property of any person. LSA-R.S. 32:58. Additional duties also arise depending on the motorist's movements on the roadway in relation to other vehicles. ES v. Thomas, 2017-1213, p. 3 (La. App. 1st Cir. 5/31/19), __ So. 3d __, __.

A left turn across a highway is one of the most dangerous maneuvers a driver can execute, and therefore, before attempting same, a driver must initially ascertain by careful observation that the maneuver can be executed safely without danger to normal overtaking and oncoming traffic and must yield right-of-way to such vehicles. U.S. Fidelity & Guaranty Company v. Bergeron, 148 So. 2d 162, 164 (La. App. 1st Cir. 1962); see also ES v. Thomas, 2017-1213 at p. 3, __ So. 3d at __. The burden rests heavily on the motorist who desires to make a left turn to explain how the accident occurred and to show that he was free from negligence. U.S. Fidelity & Guaranty Company v. Bergeron, 148 So. 2d at 165.

13

Comparative negligence is determined by the reasonableness of the party's behavior under the circumstances. Edmond v. Cherokee Insurance Company, 170 So. 3d at 1037. As to the allocation of fault, the trier of fact is bound to consider the nature of each party's wrongful conduct and the extent of the causal relationship between that conduct and the damages claimed. Watson v. State Farm Fire and Casualty Insurance Company, 469 So. 2d 967, 974 (La. 1985). In assessing the nature of the conduct of the parties, various factors may influence the degree of fault assigned, including: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger; (2) how great a risk was created by the conduct; (3) the significance of what was sought by the conduct; (4) the capacities of the actor, whether superior or inferior; and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. Watson v. State Farm Fire and Casualty Insurance Company, 469 So. 2d at 974.

The evidence set forth at trial establishes that, on the morning of the accident, Mr. Morales was attempting to make a left turn off of Hwy. 30 into the driveway of a business at around 8:00 in the morning when, according to Mr. Morales, "traffic was busy." At the time he made his left turn in the face of oncoming traffic, he was driving an extended cab truck and pulling a twenty-foot trailer, which was carrying a 6,000-pound forklift. Mr. Morales testified that although Ms. Burns's vehicle seemed to be approaching from a distance of approximately 150 to 200 yards away when he started making his turn, he was not sure how far away she was because he was "too busy" watching his rear-view mirrors to see if "everything was cool in the back." He testified that once he pulled into the driveway he "assumed" that the trailer was all the way in the driveway, but admitted that a portion of the trailer was on the shoulder of the highway. Mr.

14

Morales also admitted that he could have readily pulled up another twenty feet or so in the driveway.

Ms. Burns testified that Mr. Morales approached her from the opposite direction while pulling a large piece of equipment, and made a left-hand turn in front of her vehicle, causing her to apply her brakes. Ms. Burns then looked into her rearview mirror and saw Mrs. Settoon's vehicle approaching behind her; she then eased off of her brakes so Mrs. Settoon's vehicle would not hit her and swerved to the left into the southbound lane of travel around the rear of Mr. Morales's trailer to avoid hitting the trailer. Ms. Burns testified that had she not swerved her vehicle around the trailer, she would not have been able to avoid a collision with the trailer. After she returned to her lane of travel and straightened her vehicle, she heard a crash, looked into her rear view mirror, and saw the collision. Mrs. Burns testified that after the accident, she came to a stop in her lane of travel and backed up her vehicle about two car lengths, and exited her vehicle to call 911 and check on Mrs. Settoon. Ms. Burns denied stopping her vehicle on Hwy. 30 prior to the accident.

Mrs. Settoon testified that she had been following Ms. Burns at a distance of three or four car lengths for some time heading north on Hwy. 30, was traveling under the speed limit at 40 to 45 miles per hour, and tapped her brakes when she noticed the tail lights on Ms. Burns's vehicle come on. Mrs. Settoon testified that after seeing Ms. Burns's tail lights, she noticed a vehicle following closely behind her, so she could not slam on her brakes. She testified that she was in a situation where she either had to take to the shoulder or run into Ms. Burns's vehicle from the rear. Mrs. Settoon testified that she was a short person and that her vehicle was closer to the ground than Ms. Burns's truck, and that she did not see Mr. Morales's vehicle and trailer pulling a forklift approaching from the opposite direction ahead of Ms. Burns's truck. Mrs. Settoon testified that as soon as she took to the

15

shoulder, she hit the trailer because all four of the tires on her vehicle had not made it onto the shoulder. She testified that before the accident, she was not distracted and was not on her phone at any time. Moreover, Mrs. Settoon testified that she had watched Ms. Burns's vehicle the entire time that she was following it, and that Mrs. Burns had not done anything that would lead Mrs. Settoon to believe that she was not paying attention or not driving properly. In her opinion, Mr. Morales was at fault in causing the accident because he did not allow himself enough time to make the left turn given the length of his vehicle and trailer, which she estimated was 40 to 45 feet, and the size (weight) of the load he was pulling.

After reviewing the testimony and evidence presented, the jury apparently determined that Mr. Morales's negligence in making a left turn in front of Ms. Burns's vehicle and other oncoming traffic, without using the care required of a person making a left turn, created an emergency that caused Ms. Burns to brake, then swerve around his trailer, which caused Mrs. Settoon to take her vehicle to the shoulder where the collision occurred. Our examination of the record in its entirety convinces us that the jury's finding, i.e., that the proximate cause of the accident, and the damages and injuries resulting therefrom, was the action of Mr. Morales, is reasonable and supported by the evidence and testimony of the parties. In reaching its verdict, the jury also heard the testimony of the drivers of two vehicles travelling south on Hwy. 30 behind Mr. Morales's vehicle, the investigating officer, and an accident reconstruction expert called by the defendants. To the extent that the testimony of these witnesses conflicted in any respect, we note that the jury was charged with assessing the credibility of the witnesses and, in doing so, was free to accept or reject the testimony of any witness, in whole or in part. See Johnson v. State Through Department of Transportation and Development, 275 So. 3d at 904.

16

We have considered the arguments urged on appeal by defendants, and after thoroughly reviewing the evidence, we conclude that this court has no basis to substitute a different view of the evidence, in particular, one that was presented to and rejected by the jury, and reallocate the percentages of fault, where a reasonable factual basis exists for the findings of the jury. Thus, on review, we cannot say that the jury was manifestly erroneous in allocating 100% fault to Mr. Morales. See Stobart v. State Through Department of Transportation and Development, 617 So. 2d 880, 882-883 (La. 1993).

Accordingly, we find no merit to the defendants' third assignment of error.

## Damage Awards
## (Assignment of Error Number Four)

In their fourth and final assignment of error, the defendants challenge the jury's award for future medical expenses. The defendants argue that the jury's award of $100,000.00 for Mrs. Settoon's expenses was speculative and not supported by the evidence, and was unreasonably high, where they contend Mrs. Settoon failed to mitigate her damages.

Recovery of future medical expenses is dependent upon the tort victim establishing the probability of future medical expenses with supporting medical testimony and estimations of their probable cost. Gaspard v. Southern Farm Bureau Casualty Insurance Company, 2013-0800 (La. App. 1st Cir. 9/24/14), 155 So. 3d 24, 35. Although the appellate record must establish that future medical expenses will be necessary and inevitable, an award for future medical expenses is inherently speculative and not susceptible of being calculated with mathematical certainty. See Menard v. Lafayette Insurance Company, 2009-1869 (La. 3/16/10), 31 So. 3d 996, 1006; Bass v. State, 2014-0441 (La. App. 1st Cir. 11/7/14), 167 So. 3d 711, 716. It follows, therefore, such awards "generally do not involve determining the amounts, but turn on questions of credibility and inferences, i.e.,

whose experts and other witnesses does the jury believe?" Menard v. Lafayette Insurance Company, 31 So. 3d at 1006 (*quoting* Frank L. Maraist & Thomas C. Galligan, Jr., Louisiana Tort Law § 7.02, 7-4 (Michie 2009)). Thus, when the record establishes that future medical expenses will be necessary and inevitable, courts should not reject the award because the record does not provide the exact value if the court can determine from the record, past medical expenses, and other evidence a minimum amount that reasonable minds could not disagree would be required. In such cases, the court should award all future medical expenses that the medical evidence establishes the plaintiff, more probably than not, will be required to incur. Bass v. State, 167 So. 3d at 716.

At trial, extensive testimony was presented regarding Mrs. Settoon's injuries and treatment. As a result of this accident, Mrs. Settoon was diagnosed with trigeminal neuralgia resulting from the accident. Dr. Kimberly Klippenstein, Mrs. Settoon's treating ophthalmologist,[8] opined that as a result of the accident, Mrs. Settoon was experiencing sensory trauma to the trigeminal nerve and explained that the electric-shock type feelings she was experiencing was caused by the rejuvenation of the nerve. Dr. Klippenstein diagnosed Mrs. Settoon with traumatic neuropathy temporally related to the accident and testified that her pain was not going away.

Dr. Laura T. Hetzler, an expert in otolaryngology and facial plastics and reconstructive surgery, opined that with the presence of a gold weight previously placed in plaintiff's eyelid, the force of the accident caused a trigeminal neuralgia or severe pain associated with that side of her face and eyelid. Dr. Hetzler likewise noted there was no indication that the pain would ever go away and recommended that the best future treatment to relieve this pain was medical management. She

---

[8]In 1996, Mrs. Settoon began treatment with Dr. Klippenstein and her team in Nashville to remove a facial nerve neuroma, which necessitated the placement of a gold weight in her eyelid to help it close. Dr. Klippenstein testified that her facial neuroma had nothing to do with the injuries Mrs. Settoon sustained in the accident.

further noted that Mrs. Settoon was overtly depressed and extremely anxious as a result of her eye problems. Dr. Hetzler referred Mrs. Settoon to Sarah MacDowell, a physical therapist specifically trained in facial retraining and recovery, suggested that she see a neurologist, and also referred her for counseling.

Dr. Sean Graham, an interventional pain management specialist to whom Mrs. Settoon was referred by her neurologist, began treating Mrs. Settoon for pain management. Dr. Graham opined that Mrs. Settoon suffered from post-traumatic neuralgia, which he explained was from the impact causing injury to the nerve, which resulted in chronic pain. Dr. Graham testified that the shooting electrical paresthesia-type pains or post-traumatic neuralgia that Mrs. Settoon was experiencing was fairly rare and can be very difficult to treat. Dr. Graham noted that nerve blocks are not always effective for this atypical type of facial pain, and that frequently, most treatments are not effective. Dr. Graham further opined that Mrs. Settoon was a candidate to attempt a trigeminal ganglion block, but cautioned that it afforded, at best, probably a fifty percent chance of providing relief, and that even if a block did provide any relief, that relief would be temporary. Dr. Graham testified that the best treatment option for Mrs. Settoon at that time was to try to control the pain with pain medication. Dr. Graham candidly stated that Mrs. Settoon would continue to have this pain or a pain very similar to it for the rest of her lifetime. Notably, Dr. Graham testified that he trusted that Mrs. Settoon was accurately relaying her pain levels, he found her to be historically accurate in presenting information, and he believed her accounts of the pain and trauma she was experiencing.

Deann Johnson, Ph.D., a clinical psychologist, testified that she was treating Mrs. Settoon for depression due to the chronic eyelid pain resulting from the instant accident, which has significantly impacted and altered Mrs. Settoon's life. Dr. Johnson opined that Mrs. Settoon was "hopeless" and diagnosed her with

19

major depressive disorder recurrent. Dr. Johnson developed a plan of treatment of cognitive behavioral therapy to address the depression resulting from the chronic pain. Dr. Johnson noted that Mrs. Settoon is dealing with a type of chronic pain that is notoriously difficult to treat, and expected that in the future, she will continue to have "ups and downs."

The jury awarded Mrs. Settoon $36,074.42 in past medical expenses, which had accumulated over the course of a four-year period from the time of the accident to the time of trial. At the time of trial, Mrs. Settoon, who was age 62, was treating with Dr. Graham ($130.00 to $140.00 per hour) for pain management and Dr. Johnson ($150.00 per hour) for counseling on a monthly basis, as well as Sarah MacDowell (over $100.00 per hour) for physical therapy and Dr. Hetzler ($300.00 or $400.00 per hour), her otologist. Mrs. Settoon also incurred monthly pharmaceutical expenses for prescription medication. Importantly, her physicians all agreed that Mrs. Settoon will likely continue to experience pain for the remainder of her life, necessitating treatment, physical therapy, and counseling.

On review, we find the record evidence sufficiently establishes that, as a result of the injuries Mrs. Settoon sustained in this accident, future medical expenses will be medically necessary. When the record establishes that future medical expenses will be necessary and inevitable, the court should not reject an award of future medical expenses on the basis that the record does not provide the exact value of the necessary expenses, if the court can examine the record and determine from evidence of past medical expenses and other evidence a minimum amount that reasonable minds could not disagree will be required. See Gaspard v. Southern Farm Bureau Casualty Insurance Company, 155 So. 3d at 36, citing Stiles v. K Mart Corporation, 597 So. 2d 1012, 1012 (La. 1992). Considering the testimony herein, Mrs. Settoon's age at the time of trial, and the evidence of past medical expenses she incurred, we find that the evidence reasonably supports the

20

jury's conclusion that Mrs. Settoon should be awarded future medical expenses. Furthermore, we find no error in the amount awarded.

To the extent that the defendants argue that Mrs. Settoon failed to mitigate her damages, we likewise find no support. Mrs. Settoon testified that four to six weeks after the accident, she began to experience a painful "shocking" or "stabbing" sensation in her eye. Mrs. Settoon described the pain, stating that it felt like a knife stabbing her in the eye 30 to 40 times a day. Initially, Mrs. Settoon contacted Dr. Kimberly Klippenstein, whose practice is located in Nashville, Tennessee, and relayed her complaints. Dr. Klippenstein advised Mrs. Settoon to see her ophthalmologist in Baton Rouge, Dr. Christopher Grenier, to have her eye examined. Dr. Grenier removed a fiber he found in Mrs. Settoon's eye that was imbedded "very deep," which apparently was lodged when the airbags deployed upon impact. However, when the shock-type pains continued, Mrs. Settoon traveled to Nashville to see Dr. Klippenstein in March of 2015. Dr. Klippenstein opined that some of the nerves in her eye were damaged in the accident and were in the process of trying to heal themselves. Dr. Klippenstein testified that the electric shock-type sensation that Mrs. Settoon was experiencing was common in situations involving innervation of a sensory nerve, and that she was hopeful that these electric shock-type feelings would resolve. Dr. Klippenstein testified that there was nothing she could do surgically to alleviate the pain, so she suggested that Mrs. Settoon visit a neurologist to see if anything could be done medically for the pain.

Mrs. Settoon testified that initially, after seeing Dr. Klippenstein, the plan was to give it a year, year and a half to see if the nerves could "fix" themselves, which was what she was hoping would happen. Nonetheless, she eventually saw a neurologist when there was no improvement in the pain she was experiencing. Mrs. Settoon testified that she has now seen fourteen different doctors in her

21

ongoing attempt to obtain relief from the pain she has experienced since this accident. She testified that the pain will not go away.

As to any claim that she failed to mitigate her damage, after a thorough review of the extensive medical testimony and evidence in this case, we reject this argument as meritless. As the record demonstrates, Mrs. Settoon actively sought medical treatment to try to improve her symptoms and alleviate her pain.

Thus, we likewise find no merit to this assignment of error.

## CONCLUSION

For the above and foregoing reasons, the trial court's October 25, 2018 judgment, rendered in accordance with the jury's verdict is hereby amended to reflect that judgment is rendered against Juan Morales, Plant Performance Services, LLC, and Continental Casualty Company. As amended, this judgment is affirmed. Costs of this appeal are assessed to the defendants/appellants, Juan Morales, Plant Performance Services, LLC, and Continental Casualty Company.

**AMENDED, AND AS AMENDED, AFFIRMED.**