## NOT DESIGNATED FOR PUBLICATION

### STATE OF LOUISIANA

### COURT OF APPEAL

### FIRST CIRCUIT

### 2023 CA 1079

### MITCHELL MEREDITH AND SARAH ASHLEY MEREDITH, INDIVIDUALLY AND ON BEHALF OF SARAH GRACE MEREDITH

### VERSUS

### GARRISON PROPERTY AND CASUALTY INSURANCE COMPANY

*DATE OF JUDGMENT:*    JUL 2 5 2024

ON APPEAL FROM THE NINETEENTH JUDICIAL DISTRICT COURT
PARISH OF EAST BATON ROUGE, STATE OF LOUISIANA
NUMBER 678153, SECTION 23

HONORABLE MARTIN E. COADY, JUDGE AD HOC

* * * * * *

| | |
|---|---|
| Sean D. Fagan<br>Baton Rouge, Louisiana | Counsel for Plaintiffs-Appellants<br>Mitchell Meredith and Sarah Ashley<br>Meredith, Individually and on Behalf<br>of Sarah Grace Meredith |
| Michael M. Thompson<br>Baton Rouge, Louisiana | Counsel for Defendant-Appellee<br>Garrison Property and Casualty<br>Insurance Company |
| H. Minor Pipes, III<br>Stephen L. Miles<br>Catherine F. Giarrusso<br>New Orleans, Louisiana | |

* * * * * *

BEFORE: GUIDRY, C.J., CHUTZ, AND LANIER, JJ.

Disposition: **AFFIRMED.**

**CHUTZ, J.**

In this suit for damages arising from a vehicular accident, plaintiffs, Mitchell and Sarah Ashley Meredith, individually and on behalf of their minor child, Sarah Grace, appeal a judgment dismissing their claims against defendant, Garrison Property and Casualty Insurance Company ("Garrison"). We affirm.

## FACTUAL AND PROCEDURAL HISTORY

While driving to New Orleans to attend a rehearsal dinner on January 13, 2017, Mr. Meredith was involved in a vehicular accident ("the accident"). Mr. Meredith was driving his SUV eastbound in the right lane of I-10 while Arnulfo Reyes was driving a Toyota Camry in the adjacent left lane. Mr. Reyes suddenly veered his vehicle into the right lane and struck the driver's side of Mr. Meredith's vehicle. Mr. Reyes was attempting to avoid striking the rear of a truck that had stopped in front of him in the left lane after having a tire blowout. Neither driver lost control of their vehicle, and they each came to a stop on the shoulder of I-10 where they waited for the police to arrive. No airbags deployed during the incident.

Mr. Meredith testified he began to feel stiff at the scene of the accident. After giving his statement to the police, he proceeded to New Orleans in his SUV to meet his wife at the rehearsal dinner. The next day, Mr. Meredith and his wife attended the wedding and reception. Although Mr. Meredith stated he was feeling stiff in the neck, back, and shoulders, he danced with his wife at the reception.

Mr. Meredith first consulted a physician several days later, on January 17, 2017, complaining of headaches and pain in his neck, lower and middle back, and left shoulder. He was diagnosed with soft-tissue injuries consisting of cervical, thoracic, and lumbar sprains and associated myofascial pain. He was prescribed a muscle relaxer and ordered to have physical medicine treatment (massage, electrical stimulation, moist heat, and cold packs) three times per week. According to Mr. Meredith, his pain waxed and waned, and he had good and bad days. Several weeks

2

after the accident, on February 4, 2017, Mr. Meredith and his brother installed a 25-pound, 12-foot-by-24-foot vinyl billboard in front of the office of their family law firm, requiring the use of a cherry picker to raise the billboard approximately thirty feet above the ground.

In March 2017, Mr. Meredith began physical therapy with Mr. Robert Montanaro, who was accepted at trial as an expert in the field of physical therapy. Mr. Meredith continued physical therapy with Mr. Montanaro until July 2017, reporting varying levels of pain on each visit. On a questionnaire he completed at his March 3 session, Mr. Meredith indicated he was able to lift heavy weights, although it caused extra pain to do so. On that date, Mr. Meredith further reported he had increased pain after lifting weights and doing squats. In subsequent visits in March and May 2017, respectively, he also reported experiencing increased pain after incidents where he helped move office furniture by pushing it on a dolly and stood for hours painting his office and doing trim work.

On June 7, 2017, a straight leg raise test performed by Mr. Montanaro was positive and caused pain in the area of Mr. Meredith's left buttock, which was a change from the original test performed in March 2017. During this visit, Mr. Meredith complained for the first time of experiencing pain radiating down his left leg. Medical testimony presented at trial indicated his leg pain, called radiculopathy, was caused by a lumbar disc injury. Mr. Montanaro testified he believed it was more likely than not Mr. Meredith's continued complaints were caused by the accident.

On June 20, 2017, Mr. Meredith consulted Dr. Jorge Isaza, an orthopedic surgeon specializing in spine surgery. In contrast to March 2017, Mr. Meredith indicated pain now prevented him from lifting heavy weights. An MRI taken on June 6, 2017, revealed a left-sided disc herniation at L4-L5 compatible with an annular tear. Dr. Isaza ordered continued physical therapy and referred Mr.

3

Meredith to another physician for the first of several epidural steroid injections he was to receive.

Because the injections gave Mr. Meredith some relief, there were extended periods during which he received no treatment for his back, including one period in excess of a year. Eventually, Mr. Meredith was dissatisfied with the extent of relief obtained and discussed several alternate treatment options with Dr. Isaza, including a disc replacement. Dr. Isaza opined it was more likely than not the accident caused Mr. Meredith's L4-L5 disc injury.

In June 2020, almost three and one-half years after the accident, Mr. Meredith sought a second opinion from Dr. Eric Oberlander, a neurologist. Based on an updated MRI, Dr. Oberlander recommended Mr. Meredith undergo a fusion at L4-L5. Mr. Meredith elected to forego surgery at that time, testifying the timing was not right because his wife was pursuing an advanced post-graduate degree in law, and they planned to have another child. In February 2022, approximately one month prior to trial, Mr. Meredith scheduled a fusion surgery with Dr. Oberlander for June 1, 2022, explaining his wife was scheduled to graduate in May. Dr. Oberlander testified Mr. Meredith's need to have fusion surgery more likely than not was caused by the accident.

As a result of the accident, Mr. Reyes' liability insurer carrier paid Mr. Meredith its policy limits of $15,000. Garrison,[1] Mr. Meredith's uninsured/underinsured insurance carrier, also made unconditional tenders to plaintiffs amounting to $54,455, plus $3,944 in medical payments. Therefore, plaintiffs received payments totaling $73,399 in compensation for injuries sustained in the accident.

---

[1] Garrison is a USAA company and/or affiliate of USAA. The parties used the names Garrison and USAA interchangeably throughout trial.

In January 2019, plaintiffs filed suit against Garrison, alleging Mr. Reyes was underinsured, and the tenders made by Garrison were insufficient for the damages sustained. Plaintiffs sought additional damages for Mr. Meredith, loss of consortium damages for Mrs. Meredith and plaintiffs' minor child, and penalties and attorney fees for Garrison's allegedly arbitrary and capacious refusal to tender its policy limits or an amount sufficient for plaintiffs' damages. (R 7-10)

A jury trial was held in this matter on March 7-11, 2022. The jury returned a special verdict finding that while Mr. Reyes was at fault in causing the accident and Mr. Meredith was injured therein, Mr. Meredith was entitled to zero damages as fair compensation for his injuries. The jury further found Sarah Ashley and Sarah Grace Meredith did not sustain any injuries as a result of the accident. Lastly, the jury concluded plaintiffs did not prove Garrison failed to timely tender an amount over which reasonable minds could not differ or acted arbitrarily, capaciously, or without probable cause. In accordance with the jury verdict, the trial court signed a judgment on March 28, 2022, dismissing plaintiffs' claims against Garrison, with prejudice, and casting plaintiffs with all costs.

The plaintiffs subsequently filed a motion for new trial or, alternatively, judgment notwithstanding the verdict. Following a hearing, the trial court granted a new trial on the basis the jury "verdicts were inconsistent." Garrison filed a writ application with this court seeking review of the trial court's ruling. On November 17, 2022, this court granted the writ and reversed the grant of a new trial. The writ panel concluded the trial court abused its discretion in granting a new trial because the jury had not abused its great discretion and its interpretation of the evidence was fair. The Louisiana Supreme Court denied plaintiffs' writ application. See *Meredith v. Garrison Property and Casualty Insurance Company*, 22-0945 (La. App. 1st Cir. 11/17/22), 2022 WL 17065981 (unpublished), writ denied, 23-00199 (La. 4/12/23), 359 So.3d 23. Thereafter, plaintiffs took the instant appeal from the March 28, 2022

5

judgment dismissing plaintiffs' claims. In two assignments of error, plaintiffs assert the jury erred in finding plaintiffs sustained no damages and in failing to find Garrison acted in bad faith in handling plaintiffs' claim.

## DISCUSSION

Plaintiffs argue the jury erred in awarding zero damages despite finding Mr. Meredith was free of fault and was injured in the accident. They point out there was unrebutted expert testimony from Drs. Isaza and Oberlander and Mr. Montanaro opining the accident caused Mr. Meredith's disc injury and necessitated an L4-L5 fusion surgery. Plaintiffs further maintain Garrison failed to offer any evidence to rebut the *Housley* presumption, as forth by the Louisiana Supreme Court in *Housley v. Cerise*, 579 So.2d 973, 980 (La. 1991). Under the *Housley* presumption, an injury is presumed to have resulted from an accident if before the accident the plaintiff was in good health but, commencing with the accident, the symptoms of the disabling condition appear and continuously manifest themselves afterward, provided the medical evidence shows a reasonable possibility of a causal connection between the accident and the disabling condition. *Housley*, 579 So.2d at 980. Plaintiffs note it is unrefuted Mr. Meredith had no issues with his back before the accident, his symptoms began with the accident, and his symptoms have never resolved. Thus, they argue the jury's arbitrary disregard of the uncontradicted expert testimony of plaintiffs' experts constituted manifest error since causation is a matter beyond the competence of laymen.

In opposition, Garrison contends plaintiffs' arguments should be rejected under the law of the case doctrine since a panel of this court has previously decided the jury's interpretation of the evidence was fair. Moreover, Garrison argues the jury's obvious conclusion that plaintiffs were fully compensated for the injuries caused by the accident by the prior payments they received was not manifestly

6

erroneous, particularly since there were issues regarding Mr. Meredith's credibility.[2]

Additionally, Garrison points out there was evidence of Mr. Meredith engaging in physically demanding activities between the time of the accident and the diagnosis of his disc injury, such as lifting weights, doing squats, installing a vinyl billboard, moving furniture, and painting and doing trim work for multiple hours at a time. Garrison notes Mr. Meredith did not complain of pain radiating from his back down his leg until after these activities.

Garrison maintains the accident caused only soft-tissue injuries, and Mr. Meredith's annular tear and disc herniation were caused by the strenuous activities he engaged in after the accident. According to Garrison, the jury was entitled to assess witness credibility and weigh the evidence and was not required to accept the opinions of the expert witnesses.

We agree with Garrison's contention that the prior decision of the writ panel is the law of the case in this matter. In rendering its decision reversing the trial court's grant of a new trial, the writ panel concluded the jury did not abuse its great discretion in finding liability but awarding zero damages based on its fair interpretation of the evidence. See *Meredith*, 2022 WL 17065981, at *1. The writ panel denied plaintiffs' request for rehearing, and their application for a supervisory writ to the Louisiana Supreme Court was denied.

Generally, when an appellate court grants an application for supervisory writs and renders judgment, either peremptorily or after briefing and oral argument, the

---

[2] On June 27, 2020, Mr. Meredith sustained a serious injury to his left arm and shoulder when he fell off an eight-foot ladder. His injury required surgery and has since caused him chronic left arm and shoulder pain. At trial, Mr. Meredith testified he believed he was three to four feet off the ground when he fell. Under further questioning by defense counsel, however, he acknowledged he gave a statement several months after the incident in which he stated he believed he fell from the second highest rung of the eight-foot ladder. Garrison contends the discrepancy between Mr. Meredith's prior statement and his trial testimony raised questions regarding his credibility. Garrison argues Mr. Meredith's credibility was further impacted by his failure to inform his physicians about the ladder incident, as well as such activities as moving furniture and painting for extended periods, even though Drs. Isaza and Oberlander each indicated their opinions did not change after hearing testimony concerning these activities.

7

decision will be the law of the case in subsequent proceedings in the same matter, thereby barring relitigation of the issue in the appellate court in a later appeal. *Jeff Mercer, L.L.C. v. State, Department of Transportation and Development*, 14-1751 (La. App. 1st Cir. 6/5/15), 174 So.3d 1180, 1185, writ denied, 15-1624 (La. 10/30/15), 179 So.3d 618. The law of the case doctrine applies to those who were parties to the case when the former decision was rendered and to issues actually presented and decided by the appellate court. The reasons for the doctrine are to avoid re-litigation of the same issue; to promote consistency of result in the same litigation; and to promote efficiency and fairness to the parties by affording a single opportunity for the argument and decision of the matter at issue. *Jeff Mercer, L.L.C.*, 174 So.3d at 1185-86.

Nevertheless, the application of the law of the case doctrine is discretionary, and a regular appeal panel has a duty to review, overrule, modify, and/or amend a writ panel's decision on an issue when, after reconsidering the issue to the extent necessary to determine whether the writ panel's decision was correct, the appeal panel finds the writ panel's decision was in error. Mere doubt as to the correctness of the writ panel's prior ruling is not enough to change the prior ruling. The prior ruling should be overruled or modified only when it is manifestly erroneous or application of the law of the case doctrine would result in an obvious injustice. *Atchafalaya Basinkeeper v. Bayou Bridge Pipeline, LLC*, 18-0417 (La. App. 1st Cir. 2/22/19), 272 So.3d 567, 569-70.

The arguments plaintiffs raise in this appeal are the same arguments they previously raised in their opposition to Garrison's writ application. The writ panel fully considered these arguments in deciding whether the trial court erred in granting a new trial on the basis the jury verdict finding liability but awarding zero damages was inconsistent. The writ panel concluded the verdict was not inconsistent because the jury finding Mr. Meredith was injured in the accident but was entitled to zero

8

damages was based on a fair interpretation of the evidence, particularly given the evidence of prior payments received by the plaintiffs and the lack of any instruction to the jury regarding consideration of these payments.[3] Such a verdict is consistent with the jury concluding the accident caused only soft-tissue injuries, and Mr. Meredith's disc injury resulted from the physically demanding activities he engaged in after the accident. Given such a conclusion, the jury could also have reasonably concluded the prior payments of over $73,000 were sufficient to fully compensate plaintiffs for the soft-tissue injuries Mr. Meredith sustained in the accident. See *Lilly v. Allstate Insurance Company*, 577 So.2d 80, 85-86 (La. App. 1st Cir. 1990), writ denied, 578 So.2d 914 (La. 1991).

On appeal, plaintiffs have presented nothing new concerning the correctness of the writ panel's decision. Rather, plaintiffs argue the law of the case doctrine is not applicable because the writ panel did not have the benefit of the entire evidentiary record since Garrison failed to attach the medical records plaintiffs introduced at trial to its writ application. We disagree.

Initially, we note there appears to have been no impediment preventing plaintiffs from attaching the medical records to its opposition to the writ application. See *Brumfield v. Dyson*, 418 So.2d 21, 22-23 (La. App. 1st Cir.), writ denied, 422 So.2d 162 (La. 1982). Plaintiffs have offered no explanation for their failure to do so. Moreover, we have reviewed the medical records referred to by plaintiffs. While the medical records are more comprehensive than the trial testimony, the information contained in those records, in all pertinent respects, is essentially cumulative of testimony given at trial. This testimony included information concerning the varying

---

[3] Plaintiffs did not object to the lack of an instruction to the jury regarding consideration of the prior payments in rendering its verdict. In failing to object, plaintiffs waived any objection to the lack of such an instruction and to the jury's consideration of the prior payments. La. C.C.P. art. 1793(C); *Arnaud v. Scottsdale Insurance Company*, 14-1809 (La. App. 1st Cir. 9/18/15), 182 So.3d 97, 102; see also *Brumfield v. Spera*, 09-0566 (La. App. 1st Cir. 12/23/09), 2009 WL 4982128, *4 n.5 (unpublished), writ denied, 10-0124 (La. 4/5/10), 31 So.3d 364.

levels of pain Mr. Meredith reported over time, his reported symptoms, medical treatments he received, test results, and diagnoses. The writ panel had this information before it in the trial transcript when it rendered its decision.

Nor do we find merit in plaintiffs' contention that the jury erred in arbitrarily rejecting the uncontradicted opinions of their expert witnesses concerning causation and in failing to apply the *Housley* presumption in plaintiffs' favor. After weighing and evaluating the testimony of plaintiffs' experts, the jury was free to accept or reject the experts' opinion, in whole or in part. See *Jones v. Bravata*, 18-0837 (La. App. 1st Cir. 5/9/19), 280 So.3d 226, 238, writ denied, 19-01850 (La. 2/26/20), 294 So.3d 477. In this case, there was evidence of activities Mr. Meredith engaged in that the jury reasonably could have concluded constituted intervening causes of his disc injury. Mr. Meredith reported these activities caused increased pain, and he began experiencing pain radiating down his left leg, a symptom of a disc injury, only after performing these activities. Dr. Isaza testified even minor daily activities can cause a new injury, and a disc herniation can be caused by moving furniture, painting, or similar activities. Additionally, while Dr. Oberlander believed the accident more likely than not caused Mr. Meredith's disc injury, he conceded Garrison's questions regarding causation were fair.

Based on our review of the appellate record, together with the great discretion afforded to the jury's findings, we conclude the writ panel's decision finding the jury's verdict reflected a fair and permissible interpretation of the evidence was not manifestly erroneous and did not produce an unjust result. Under the law of the case doctrine, we decline to reconsider the writ panel's prior decision.[4]

---

[4] We pretermit consideration of plaintiffs' second assignment of error alleging the jury erred in failing to find Garrison acted in bad faith in its handling of plaintiffs' claim. As plaintiffs pointed out in their reply brief, there can be no bad faith analysis "once the jury finds that no damages have been incurred." We agree. The issue of bad faith is moot in view of our concurrence in the writ panel's decision concluding the jury did not abuse its great discretion in awarding zero damages.

10

**CONCLUSION**

For these reasons, the March 28, 2022 judgment of the trial court is affirmed.

Plaintiffs are to pay all costs of this appeal.

**AFFIRMED.**